objection to the defect in the pleading at the first opportunity; but when the litigation has proceeded without reference to the character of the pleadings, that fact is considered in the imposition of terms, and then such rule is not deemed the governing, nor necessarily the guiding, one for the discretion of the court."

The terms herein imposed seem reasonable and sufficient, and the order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.

---

(79 App. Div. 183.)

PEOPLE ex rel. METROPOLITAN ST. RY. CO. v. STATE BOARD
OF TAX COM'RS.

(Supreme Court, Appellate Division, Third Department.  January 23, 1903.)

1. TAXATION—ASSESSMENT OF CORPORATE FRANCHISES—COMMISSION· TO STATE
   AUTHORITY—VIOLATION OF CONSTITUTION.
       Laws 1899, c. 712, amends Tax Law, § 2, subd. 3, by adding to the
   subjects of taxation therein specified the franchise to construct, maintain, or operate over or under streets or public places of any municipality the tangible property thereon which was previously assessible as realty, and provides that the value of such tangible property, plus the value of the franchise, shall be assessed together, under the designation of a "special franchise," by the state board of tax commissioners, which shall report such assessment to the local assessor, to be placed on his roll; taxes to be levied and collected against it as against other property. Held to violate Const. art. 10, § 2, guarantying the local selection of local officers, in so far as it withdraws the tangible property from the jurisdiction of the local assessors, though the amount of property thus withdrawn is relatively small.
       Smith and Chester, JJ., dissenting.

Appeal from special term.

Certiorari by the people of the state of New York, on the relation of the Metropolitan Street Railway Company, against the state board of tax commissioners.  From an order modifying and sustaining a tax assessment on relator's property, it appeals.  Affirmed on the facts, and reversed on the law, and assessment vacated.

The relator herein seeks to review and vacate the assessment made against it by the state board of tax commissioners under the provisions of the so-called special franchise tax act; and the proceedings are taken under the provisions of article 2 of the tax law, as amended by chapter 712 of the Laws of 1899.  A certiorari was issued, and the issues made by the return thereto were duly referred.  Upon the coming in of the referee's report, the special term approved and adopted the same, and made an order modifying the assessment in some particulars, and, as so modified, sustaining the same.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

Henry A. Robinson and Sheehan & Collin (Wm. H. Page, Jr., of counsel), for appellant.

John C. Davies, Atty. Gen. (J. Newton Fiero, of counsel), for respondent.

PARKER, P. J.  The first question presented by this appeal is whether the provisions of the law which authorize the assessment

and tax complained of are violative of section 2 of article 10 of our state constitution. Such act (being chapter 712 of the Laws of 1899) first amends subdivision 3 of section 2 of the tax law by adding to the subjects of taxation therein specified, the right or franchise to construct, maintain, or operate upon, over, or under the streets or public places of any town or municipality in the state, the tangible property thereon, which was already specified in the section as being real estate, and therefore assessable. The value of such tangible property, plus the value of the right to maintain and operate the same, are thereafter to be assessed and taxed together, and is denominated in the act as a "special franchise." No criticism is made that this addition to the taxable property named in the section violated any provision of the constitution, but the act further provides that the assessment of such special franchise shall be made by the state board of tax commissioners. That board is required to fix the valuations of all such special franchises, wherever found in the state, and to report such assessment or valuation to the proper local assessor; and such local officer is required to place such special franchise upon his roll of the taxable property in his district, at the valuation so received, and the tax is thereupon levied and collected against the same in the same manner and for the same purposes as against the other property on such roll. This provision, it is claimed, violates the above-cited section of the constitution, for the reason that it deprives the local assessors of a portion of their duties as such assessors, and directs the performance of the same duties by officers who are not chosen by the electors or any authorities of such locality. In the Raymond Case, 37 N. Y. 428, this section, which is familiarly known as the "Home Rule" provision of the constitution, received judicial construction in its application to the subject of assessment for the purposes of taxation. In that case the legislature, by chapter 410, Laws 1867, sought to transfer the duties of the commissioners of taxes and assessments for the city of New York, who were officers appointed by local authorities, to a board of three commissioners appointed by the governor, by and with the consent of the senate. At the time of the adoption of the constitution of 1846, such duties of assessment were, and for a long time had been, performed by district assessors. By various acts passed in 1850, 1857, and 1859, the legislature had regulated the performance of such duties, and changed the officers who were to perform them. But in each instance the selection of such officers was left to local authorities. The act of 1867, however, sought to change the selection of such officers from the city to the state, and it was at once challenged as being violative of the home rule provision of the 'constitution. The question came before the court in the case above cited, and it was there distinctly held as follows: That, beyond controversy, the office in question was exclusively a city office; that the duties imposed by the act upon the new board, although broader in their extent, were essentially the same as those exercised by the city assessors in 1846; that the plain intent of the section of the constitution in question "was to preserve to the localities the control of the official functions of which they were then possessed, and this control was carefully preserved

(consistent with the power of the legislature to make needful changes) by restricting the power of appointment of other officers to perform the same functions, to the people, or some authority, of the locality"; that hence the act of 1867 deprived the people of the city of a right secured to them by the constitution, and was therefore void. This case has never been reversed or modified, so far as I can ascertain, and would, I think, be conceded by the respondents in this case to be a controlling authority in a case where the conditions were in all respects similar. But in what respect does that case differ in principle from the one before us? There the act sought to transfer from local assessors to those appointed by the state authorities the duty of assessing all the property in the city of New York. The decision is that the legislature was without authority to do that thing; that the function of assessing such property was by the constitution secured to officers selected by the locality. The act before us does not transfer the duty of assessing all the property in the various tax districts to the state assessors, but only all of a certain specified kind. Now, if the legislature is without authority to transfer the duty of assessing all, I am at a loss to discover whence it gets the right to interfere with the assessment of any part of such property. The right to have all the property in its locality assessed by officers chosen by itself was secured to each town and municipality in the state by the constitutional provision in question, and, in my judgment, the legislature has no more power to infringe upon that right by withdrawing from its operation one particular species of property than it has to withdraw a dozen. It is clear that by the statute before us the right to assess a distinct kind of property in every district, and in some localities a very considerable portion thereof, is transferred from local to state assessors; and this transfer would seem to be as unwarranted as was the transfer attempted by the statute of 1867, which the Raymond Case condemned. It would seem that such decision "absolutely dominates" the case before us, and should control our disposition of the same. And so it does, even in the judgment of the learned jurist whose decision as referee was adopted by the court at special term, and whose opinion is now before us, were it not that he sees a distinction in the fact that the amount of property transferred from local to state assessment is in every instance very small, as compared with the whole amount of property taxed, and in some localities does not amount to anything. All of the principles decided in the Raymond Case he seems to adopt, but he sustains the act before us upon the theory that it does not substantially interfere with the home rule principle, which it is the purpose of this section of the constitution to protect. The argument is that it does not take away from the local assessors enough of their functions to operate as a substantial invasion of the right of home rule in any locality, and that therefore it is not a violation of the provisions of that section. As illustrating and sustaining this claim, he cites many cases in which acts of the legislature have been sustained that to some extent transferred from local to state officers certain duties which the local officers might, within the line of their duties, have performed. But in no one of them do I find that the

act was sustained upon the ground upon which the referee would sustain this act.

In the Draper Case, 15 N. Y. 532, which is one of the earliest cases to adjudicate upon this section, the validity of a law was in question which created a new metropolitan police district from the city of New York and three adjacent counties, and which provided for the appointment by state officers of the commissioners therein, and abolished the existing police departments of the several municipalities within such district. That case sustained the act on the ground that the state had authority to create new civil divisions for police purposes, and to administer through its own officers the duties and regulations prescribed for the same. It distinctly held that, had the act applied to the city of New York alone, it could not have been sustained, but it denied that the constitution assumed that the subject of police was localized in the several cities and counties of the state. It held that:

"As a political society, the state has an interest in the repression of disorder and the maintenance of peace and security in every locality within its limits; and if, from exceptional causes, the public good requires that legislation, either permanent or temporary, be directed toward any particular locality, whether consisting of one county or of several counties,. it is within the discretion of the legislature to apply such legislation as, in its judgment, the exigency of the case may require, and it is the sole judge of the existence of such causes."

Hence it treated the authority of the state upon the subject of police as paramount over that of the localities, and substantially held that for such reason no exclusively local function had been interfered with. As to such functions there was in fact no right of home rule to be preserved to the localities. And this is the principle which pervades and controls all the cases relied upon by the court below. In the Capital Police Case, 36 N. Y. 285, the act was held good upon the same principle, while in the Albertson Case, 55 N. Y. 50, the act was condemned because it was held to apply to the city of Troy only. So in the case of Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408, the act concededly dealt with the subject of police for the city of Albany, merely, and a very slight interference with its power of local appointment was condemned. Upon the same principle, statutes concerning excise (Board v. Barrie, 34 N. Y. 657) and the preservation of the public health (Board v. Heister, 37 N. Y. 661) were sustained. So those authorizing the construction of public parks, avenues, and even a courthouse, by commissioners named by the state, have also been sustained, even though such construction was within the scope of the functions of local officers. Astor's Case, 62 N. Y. 567; McDonald's Case, 69 N. Y. 362; Cheritree's Case, 6 Thomp. & C. 473; Hanlon's Case, 57 Barb. 383. But the foundation of each decision has been that the state had a paramount right to direct the work to be done, and hence could do it through its own instrumentalities. This is especially made clear by the reasoning of the opinion in the Oneida Courthouse Case, 170 N. Y. 108, 62 N. E. 1092.

My analysis of these cases is made only for the purpose of ascertaining how far they sustain the principle upon which the court below

has decided this case.   Whatever criticism has been or may be made of any of them is quite unimportant to this case, so long as it is apparent that in neither is the decision placed upon the ground that the infringement complained of was not sufficient to substantially imperil the principle of home rule.   In many of them the functions of the local officer were entirely transferred, and in each of them the controlling principle has been that the act of the legislature did not invade any right or function that was exclusively local in its character.   In each instance it was held or assumed that the state had the paramount right to control the subject affected by the act, and hence that there was no invasion of local functions.   As is said in the very excellent and scholarly brief submitted by the appellant's counsel on this question, it has been the nature of the power sought to be conferred upon the state officers that has controlled the decisions of the court.   Whenever the courts were of the opinion that the act did not interfere with any functions that were exclusively local, then the act was sustained, even though it wholly abolished the local office, and transferred its functions to a state or department officer.   But whenever the functions affected by the act were exclusively local,—whenever they did not come within the category of those over which it has always been recognized that the state, for the benefit of the state at large, has the paramount control,— then any transfer whatever of such local functions has not been permitted.   And therein lies the clear distinction between the Raymond Case and those above cited.   It is practically conceded by the referee that the subject of assessment of local property for local taxation is not a subject over which the state has paramount authority.   As stated by him:

"The assessment of property for the purposes of taxation has always in this state been a function of local officers elected or appointed in the locality where they discharged their duties, and this system of assessment is intrenched in the constitution to secure to the people the home rule to which they had always been accustomed, and of which the people of our race have always been tenacious."

Therefore, as against the position taken by the court below, no argument is needed to establish that proposition.

A broader and bolder position, however, was taken upon the argument of this appeal.   It was there said that no authority can be found for the claim that the assessment of property for local taxation is a function exclusively appertaining to local officers, and that the state has the same power to take from a local officer his duties, and transfer them to a state officer, as it had to take from the police commissioners of the city of New York their duties, and transfer them to officers of a department of the state.   In short, that its power over the subject of assessment is as paramount as is its power over all the several subjects referred to in the cases above cited, and that, while the constitution prohibits the state from filling a local office which at the time of its adoption was filled by election or appointment by local authorities, yet it does not prohibit it from abolishing such local office, and transferring the duties of that office to an officer of the state at large; that it may take to itself the perform-

ance of any or all of the functions of the local office, but it may not name the local officer to perform them; and, so far as the question now before us is concerned, this is upon the theory that the state possesses the absolute power to tax, and hence it may take to itself the assessing of property, which is but an incident to the power of taxation. Evidently this theory utterly annihilates constitutional protection to the principle of home rule for local municipalities, and leaves very little importance or effect to the section in question. It is at variance with many decisions of the courts construing this section, and is approved by none. In the recent decision in this court of the Brenner Case, 67 App. Div. 381, 73 N. Y. Supp. 692, it was said:

"It must be regarded as well settled that the purpose of the constitutional provision in question is to secure to localities the fundamental right of self-government; that it protects all official duties existing at the time of its adoption, vested in local officers, and inhibits the transference of such duties to officers not elected by the electors of the locality or appointed by local authorities; that it is not the officer, but the office,—the existing duties and functions,—to which the protection is extended, and which cannot be transferred to an officer elected or appointed other than in the prescribed manner."

And this case was affirmed in the court of appeals. 170 N. Y. 185, 63 N. E. 133.

Moreover, the Raymond Case, above cited, is a direct authority against such view. As shown above, it declares that the plain purpose of the section was to preserve to localities the control of the official functions of which they were possessed at the time it was passed, and that "any other construction would render the section in question, when applied to the cities of the state, substantially nugatory." Undoubtedly at that time assessors of the localities were the only ones whose duty it was to assess property for local taxation. If the power to make such assessments may be now transferred to a state officer, the control of the localities over that subject is as much taken away as if it were transferred to a local officer named by the state, and thus the purpose of that section is evaded. Clearly, the Raymond Case proceeds upon the theory that the duty of assessing local property for the purpose of local taxation was exclusively a function of the local assessors, and hence is authority for the claim that such duties may not be transferred by the legislature to any officer whatever who is not chosen by the localities themselves.

We are left, then, with the single question whether the views of the court below can be sustained upon principle only. Its argument is that the amount of property, the assessment of which is transferred from local to state assessors by this act, is so inconsiderable a portion of the whole that, as a matter of fact, neither of the localities is "in any 'material' manner deprived of local self-government"; that therefore their home rule rights are not "substantially invaded, and hence it does not at all infringe against the constitutional prohibition. But the question is not whether such transfer affects their home rule rights or their local self-government "materially" or "substantially," or, as I understand the argument, to an extent sufficient to do them any harm, but whether it does or does not amount to a direct and actual invasion of such rights. Beyond controversy, this act takes away from the local assessors the function of assessing a certain kind

of property, and transfers it to the state board of tax commissioners, and to this extent makes such board perform the functions of a local officer; and, if we sustain this act, we must sustain their authority to do that very thing. But this is the very thing that the constitution says they may not do. Officers appointed by state authority may not be authorized to perform the functions of an office exclusively local. Clearly, the invasion which we would thus sustain, if repeated, would ultimately transfer the whole function of assessment from local to state officers; and so it would seem that the first invasion is as much a violation of the constitutional prohibition as would be the one that transferred the last remnant of property remaining to the local assessor. I cannot agree that the principle of home rule is not endangered, because the courts may tell the legislature that it has intruded upon it far enough. Such is not the constitutional scheme for its protection. That instrument declares what the legislature may not do. They may not transfer the functions of a local office to state officers. If an act of the legislature attempts to do that, presumptively it is a dangerous invasion of the home rule principle. Certainly it is a prohibited one. It is a question of authority on the part of the legislature. Concededly, it would not be authorized to so transfer, by other acts, many other specified kinds of property. Concededly, the time would come when, to save to localities their home rule rights, the courts must hold an act to be unconstitutional that in itself attempts to do no more than this act does. In my judgment, both acts would be equally unauthorized.

It is suggested that so much of the "special franchise" as consists of the mere right to operate the tangible property in streets and public places has never heretofore been the subject of taxation, and that as to such new property the act in question, by depriving the local officers of the right to assess it, takes no right from them that they ever had before, and hence the principle of home rule is not involved. But it has been the duty of local assessors, ever since the office existed, to assess all property in their district that was liable to taxation, and they were the sole and only officers upon whom such duty was imposed. The legislature from time to time, as new species of property have come into existence, has imposed the burden of taxation upon them; yet it did not need an act of the legislature to enable the assessors to assess such new property. That duty devolved upon them as soon as the property was declared taxable, by virtue of the long-existing and well-recognized function of their office; and it is this very duty of assessing all the property in a locality upon which the legislature shall impose the obligation of paying a local tax that the localities insist should be exercised by officers chosen by themselves. The functions of the office are neither enlarged by an addition of property to the tax list, nor are they diminished by a removal of property from that list. Undoubtedly the legislature has the power to do either, but the function of the assessors' office remains the same. The right and the duty of the assessors to assess whatever property in their district the legislature shall declare taxable for local purposes is the long-existing and assured function of that office which is sought to be preserved. Therefore, when the leg-

islature deemed it wise to add to the taxable list the so-called special franchise, the duty of assessing it devolved at once upon the local assessors. Its creation at once brought it within the scope of their official duties. By virtue of the functions of such office it became the duty of the assessors to assess it. It is true that the assessors have never heretofore had the opportunity of assessing such property. It has never been made taxable, and so brought within the scope of their duties; but their right and duty to assess, now that it has been made taxable, has always existed, and by appointing another officer to perform that duty the act in question directly invades the functions of such office, and attacks the principle of home rule. Moreover, a considerable portion of the "special franchise" consists of tangible property that has long been assessed by the local officers. In the city of New York alone it amounts to something over $76,000,000. All such property the law in question withdraws from the assessment by local assessors. It is argued that such property is a mere adjunct to the "franchise or right to use it," and that, as the duty of assessing such right may be taken away, the duty of assessing its adjuncts must go with it. As said above, this is a question of power in the legislature, and I am unable to understand how that body gets the power to withdraw the tangible property from local assessment by merely requiring it to be assessed with the intangible right to use it. It cannot do indirectly what it may not do directly. It has no more power to add it to intangible property, and so withdraw it from local assessment, than it has the power to withdraw it directly from such assessment.

I am forced to the conclusion that so much of the act in question as provides for the assessment of a special franchise by the state board of tax commissioners is unconstitutional and void. I am not unmindful of the importance of this question. The great interest which the taxpayers of the state take in this effort to subject to the burden of taxation a very large amount of property which undoubtedly is of immense value to its owners, and the disappointment which will naturally accrue through its failure to them, and to those legislators who evidently adopted this plan as the one best calculated to protect alike the owner and the public, are fully appreciated by me. But this court does not enter as a pioneer upon the consideration of this question. Every principle involved in it has been settled by the court of appeals, and we may do no more than recognize and enforce such principles in their application to this case. As stated above, in my judgment the decision in the Raymond Case absolutely dominates this case.

CHASE, J., concurs.

KELLOGG, J. (concurring). The question of the constitutionality of the so-called special franchise amendment of the general tax law is approached with no little hesitancy, owing to its importance; also to the fact that it has been discussed and determined by an able jurist, —the learned referee appointed herein,—and the further fact that the question is avowedly on its way to the court of appeals, where alone

the question can be finally answered. Counsel on both sides have very ably and with evident conviction argued this question before us, and insist upon the deliberate judgment of this court, unbiased by what has gone before or what may come after; and we are therefore called upon to express our independent convictions, and briefly state the grounds upon which they are based.

The learned referee has held that assessing property for the purpose of taxation under the general tax laws of the state is a local function, and can be exercised only by local assessors elected by the electors of the locality or appointed by the local authorities. He says:

"The assessment of property for the purpose of taxation has always in this state been a function of local officers elected or appointed in the locality where they discharged their duties, and this system of assessment is intrenched in the constitution to secure to the people the home rule to which they had always been accustomed, and of which the people of our race have always been tenacious."

This must mean that the legislature has not the power to take from the local assessors this function, and settle it upon an individual or body appointed by the legislature. It is not a function which the legislature has power to change from a local to a state function. This conclusion of the learned referee is supported by the court of appeals in People v. Raymond, 37 N. Y. 428, and by every case in that court in which the question of assessment of property for purposes of general taxation has directly or indirectly arisen. The organization tax and franchise tax levied by the comptroller upon corporations are held not to be taxes, but charges by the state upon the right to do business in a corporate capacity,—a privilege the state may give or take away. So with the inheritance tax. It is held not to be a tax upon property, but a charge upon the succession; also a right the state may give or take away. In re Swift, 137 N. Y. 77, 32 N. E. 1096. It has never been claimed that valuations made by the comptroller, or by his appointees, or by any appointee of the state, in such cases, for the purpose of fixing the sum to be charged for the enjoyment of these state privileges, was a local function. The state has seen fit to base its claim against certain corporations upon a valuation of capital employed in the state. It might have demanded a share of their earnings, instead; and it might, without valuation, have taken a share in kind of the property of a deceased person, as the price of transmission of the remainder to the heir, devisee, or legatee. I do not, therefore, see how such incidental valuations for special purposes have any bearing upon the question before us.

Speaking generally of the home rule which the constitution essays to protect, the courts in many instances have undertaken to define, distinguish, and point out what is not a local function, as contemplated by the constitution; but, as to the matter of assessment of property for general taxation, they have uniformly held that to be a local function. The class of cases in which the courts have held the function to be exercised not to be exclusively local are such as relate to the exercise of police powers, and as instances of these are

People v. Draper, 15 N. Y. 532; People v. Pinckney, 32 N. Y. 377; Board v. Heister, 37 N. Y. 661; Board v. Barrie, 34 N. Y. 657; Astor v. Mayor, etc., 62 N. Y. 567; People v. McDonald, 69 N. Y. 362; People v. Cheritree, 6 Thomp. & C. 473; Hanlon v. Supervisors, 57 Barb. 383; City of Syracuse v. Hubbard, 64 App. Div. 587, 72 N. Y. Supp. 802; People v. Board of Sup'rs of Oneida Co., 170 N. Y. 105, 62 N. E. 1092. In these cases the court in every instance professed to see that the principle of home rule contemplated by the constitution was not involved, for the reason that the function sought to be exercised was not local in such a sense as to deprive the state from its unlimited exercise. In some cases it is true that the prevailing opinion of the court conveys the impression that local self-government, as a principle, so far as recognized by the constitution, is a sort of nebula, with limitations as uncertain, unstable, and elusive as the tail of a comet (Allison v. Welde, 172 N. Y. 421, 65 N. E. 263); but all nevertheless declare that the constitution does recognize the principle, and protects it against legislative encroachment. It will be of little worth to here state the process of court reasoning by which conclusions were in those cases arrived at. We are only concerned with the uniform finding of the court in each case that the function sought to be exercised by the state was not a local function, and the home rule principle imbedded in the constitution was in no manner or degree invaded. None of these cases excuses the conclusion arrived at on the ground that the invasion of the field protected by the constitution was slight or not substantial. None of them claims that there is a difference between a small invasion and a great one, in determining whether an act of the legislature is constitutional or otherwise. If the theory of "substantial invasion" is the proper theory in determining whether or not there has been an unlawful violation of the constitution, the courts might well have held in the Brenner Case (In re Brenner, 170 N. Y. 185, 63 N. E. 133) that the act considered was constitutional because there was left to the home rule the power of appointment and election of so many other officers that the taking away of a single office was not a substantial infringement.

It seems to me that the question of the constitutionality of the act we are considering hinges wholly upon the question as to whether or not the assessment of property for general taxation is an exclusively local function. If it is conceded to be or is determined to be an exclusively local function, and, as said by the referee, is a "system of assessment intrenched in the constitution to secure to the people the home rule to which they have always been accustomed, and of which the people of our race have always been tenacious," then it must be the duty of the courts, until the people shall change the organic law, to see that these secured rights are not unlawfully invaded. It matters not, it seems to me, how little or how great may be the invasion proposed. Every little violation of the constitution is as inexcusable as is a larger violation. Considerations of convenience or better service have no place in the discussion or in the determination of this question. If we are authorized to hew away the constitution every time it binds, and so make it run in accord

with the legislative idea of public needs, we might then take into account the good and the bad which might result from the change.

The learned referee has found that the tangible property heretofore assessed by local assessors throughout the state amounts to $76,585,225. The assessment of this is by the legislative amendment to the general tax law taken from the local assessors, and the function transferred to a state board. No one can deny that this is a palpable violation of the constitution, at least in some degree. It may not be a very large invasion, but it is a material invasion, for I assume that every invasion, if plainly an encroachment, however small it may be, is material to those who give heed to a constitutional prohibition. The excuse for transferring this power to assess the tangible property on, under, and over the public streets and places is based upon the claim that this property is inseverable from the franchise,—the intangible property. That it is not so inseverable for the purpose of valuation is plain. That is manifest from the findings of the referee, who has ascertained from the testimony of the state board of assessors the value of the tangible and intangible separately. It is also plain from the approved method of assessment adopted by the state board, viz., apprising first the whole property of the corporation, and deducting therefrom the value of all tangible property, of every name and kind, owned by the corporation, estimated on the cost of reproduction, and taking the result as the net valuation of the intangible, or franchise. It is not inseverable, either, for the purposes of enforcing payment of the tax. The franchise may be sold without the tangible property on, under, or over the streets. Its value without the tangible would be the value of both, less the cost of reproduction of the tangible,—so the state board of assessors have determined,—and both are separately valuable. The tracks of a street railway are no more essential to a profitable use of the franchise than are the power houses which furnish the power, and which are not assessed with the intangible property. Both the tracks and the power houses, as well as the rolling stock, may be replaced. The case cited (People v. O'Brien, 111 N. Y. 47, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684) to show that "the franchises would be of no value without tangible property to operate them, and so they are inseparable," was based upon Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635. That was a case where the sale of a canal by piecemeal was sought to be enjoined in equity. A levy had been made on the locks of the canal, the tollhouse, and land surrounding the outlet locks,—all essential to the uses of the canal. The court held that to sell a canal lock would destroy all value in the canal itself, and would be of no value to the purchaser; hence the sale was enjoined. It is obvious that a canal so far differs from a street railway as to make the case cited wholly inapplicable. The tracks of a railway may be removed, but the lock of the canal could not be. There could be no replacement of the property sought to be sold, appertaining to the canal; hence a sale would destroy the franchise. This cannot be the case as to any of the property contemplated to be assessed by the amendment of the tax law under the name of "special franchise."

The assessment by a state board of the franchises themselves—the intangible property of a corporation, as defined by the amended act—presents, perhaps, another question. This property is. not now property coming to the locality, but has always existed there, though it has never been locally assessed. To assess this property judiciously, or by the method adopted by the state board, the local assessors in most cases would need to go beyond their precincts. The property can hardly be said to be localized. For instance; a street .surface railway, a telegraph, telephone, or pipe line, which runs through several incorporated villages and on the highways of intervening towns, must possess a franchise from each municipality. The value of these franchises, separately considered, might be very little, but the value combined might be very great. The right to run cars on the highways of a town could only be valuable as connected with the right to run through the other municipalities. These franchises, therefore, are only links in a chain. The chain may have great value, but the links have no value, except for their being component parts of the chain itself. It is obvious that, to give a proper value to any link, the value of the entire chain must be first ascertained, and then an approximate apportionment would not be difficult. But the value of the chain largely depends upon the earning capacity for the time being of the entire property of the corporation used to do the business which the franchises permit to be done, and the value of the chain of franchises, ascertained in the mode adopted by the board of assessors,—and no better mode has been suggested,—requires a valuation of the entire corporate assets, and a separate valuation of all the tangible property in each municipality, and elsewhere situated; and then, by a process of elimination, the value of all the franchises together may be determined. It is possible that this might be done by local assessors, but in doing it they would be exercising something more than the usual local function of their offices. The appraisement by local assessors of property in another municipality would, if permissible, be a function never before exercised. They could not be protected in so doing by any principle of home rule. And if this is what would be required of them, I do not see how their local functions could be disturbed or diminished by the appointment of a state board to make this assessment. The property to be assessed is not in its nature localized in any one taxing precinct. It is not property over which the local assessor has ever exercised jurisdiction. In some cities and in some other municipalities it may be that the entire corporate property, including its franchises, is located within the municipal limits, but such cases make the exceptions rather than the rule.

I advise a reversal, and that the assessment be set aside, on the ground that the amendment to the general tax law creating a state board of assessors, and giving them power to assess the .tangible property on, under, and over streets and public places, is an invasion of the functions of local assessors, and in this respect is a violation of the constitution.

SMITH, J. (dissenting). The legislative act, the constitutional warrant for which is here challenged, was passed in May, 1899. By its

provisions a new species of property was added to the property theretofore taxable by law. This new species of property was the franchise, right, or permission granted by municipalities to use the public highways and public places within the state. This franchise, right, or permission was defined by the statute to include the tangible property of the person, copartnership, association, or corporation, the owner of the franchise itself, which was used upon the public way. It was provided that this tangible property should be taxed as part of the special franchise; that the special franchise, as thus defined, should be assessed by the state board of tax commissioners, and their assessment, as certified, should be entered by the assessors or other officers of the various localities in which said franchises existed in the proper column of the assessment roll. One of the grounds of the relator's challenge is that this act violates the home rule provisions of the state constitution, as found in section 2 of article 10 of the constitution of 1894. That provision of the constitution reads as follows:

"* * * All city, town and village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this constitution, and all officers whose offices may be hereinafter created by law, shall be elected by the people, or appointed, as the legislature may direct."

The contention of the relator is that this constitutional provision is violated by giving to the state board of tax commissioners the assessment—First, of the franchise; and, second, of the tangible property in the street, which by the act is made a part of the special franchise subject to assessment by the state officers.

That the legislature might properly give to the state board the assessment of the franchise seems to me of undoubted right. The constitution provides that "all officers whose offices may be hereafter created by law, shall be elected by the people, or appointed, as the legislature may direct." This provision is a clear index of the constitutional purpose to protect the localities in the home rule which existed at the time of the adoption of the constitution, and to that extent only. All offices thereafter created are to be filled as the legislature may direct. By this act the legislature has, in effect, created a new office,—a franchise tax assessor,—and, to the extent of the assessment of the franchise, with duties not existing at the time of the adoption of the constitution. These duties, too, are distinct from and independent of any then existing duties of local officers. An intangible franchise has never been the subject of assessment by local assessors. This is held by the referee below. See People v. Barker, 152 N. Y. 417, 46 N. E. 875; People v. Commissioners, 104 N. Y. 240, 10 N. E. 437. Most franchises are enjoyed in connection with franchises from adjoining municipalities which have a value in their union, the value of which separately, however, is uncertain and practically undeterminable, except by arbitrary apportionment. To assess these franchises, access must be had to the books of the corporation and to other data, which it would be difficult, if

not impracticable, to give to the assessors of every tax district in which the franchise existed. The duty, therefore, of assessing these intangible franchises, is, as I say, distinct from the duty of assessment of real and personal property. The fact that this franchise is by the statute termed "real estate," and that the local assessors were at the time empowered to assess all real and personal property within their tax district, does not affect the situation. Whether it be called "real estate," "personal property," or neither, is a mere matter of form. The intent of the legislature is plain to make taxable another species of property which had not theretofore been taxable, and to appoint state officers to assess the valuation of the same. But it is immaterial whether a new office has been created, or new functions have been added to an old office. In either case existing home rule is not invaded by the assignment of such functions to legislative appointees. There is preserved to the locality every function possessed by it at the time of the adoption of the constitution. People v. Pinckney, 32 N. Y. 382; City of Syracuse v. Hubbard, 64 App. Div. 589, 72 N. Y. Supp. 802. In my judgment, therefore, the right seems clear, both within the letter and within the spirit of the constitution, to give to the state board of assessors the power to assess the intangible franchise. See People v. Draper, 15 N. Y. 532; Allison v. Welde, 172 N. Y. 421, 65 N. E. 263.

By this statute, however, the tangible property of the corporation within the street, used in connection with the intangible franchise, is made a part of the special franchise which the state officers are empowered to assess. The constitutionality of this provision presents a more serious question. This tangible property amounts to upwards of ninety millions of dollars within the state. It has heretofore since its creation been assessed by the local assessors. It was so assessed at the time of the adoption of the constitution. By this act this local function existing at the time of the adoption of the constitution has been taken away from the local officers and given to the state board. By what rule of construction can this be justified?

Chapter 564 of the Laws of 1865 conferred upon the commissioners of Central Park, appointed by the central power, the exclusive care, management, and control of portions of Sixth avenue and certain other streets in the city of New York, for the purpose of regulating, grading, and otherwise improving the same. In Astor v. Mayor, etc., 62 N. Y. 567, that act was questioned as violating the home rule provision of the constitution, by transferring to officers appointed by the central power functions theretofore always discharged by local officers elected or appointed in the locality. This act was held constitutional, and the rule, as stated in the headnote, is as follows:

"The constitutional provision does not prohibit the legislature from clothing officers appointed by it for the carrying out of a public improvement with power to perform acts which have an especial relation to and connection with such improvement, simply because the power to perform such acts was at the time of the adoption of the constitution vested in local officers elected by the people."

In discussing that act, Justice Miller, writing for the court, says:

"It would be carrying the doctrine of noninterference with local officers far beyond any reported case to hold that in no case whatever could any

of the powers existing in a local officer at the time of the adoption of the constitution be taken away without violating the provision cited."

In People v. Draper, 15 N. Y. 543, Denio, J., in writing of this provision of the constitution, says:

"If we were to establish the principle that the legislature can never reduce the administrative authority of counties, cities, and towns; can never resume in favor of the central power any portion of the jurisdiction of those local divisions, or change the partition of it among them, as it existed when the constitution was adopted,—we should, I think, make an impracticable government."

The intimate relation of the tangible property in the street to the intangible property to which it is an incident is seen at a glance. For many purposes they are legally inseparable. In People v. O'Brien, 111 N. Y. 47, 18 N. E. 702, 2 L. R. A. 255, 7 Am. St. Rep. 684, the court, in its opinion, says:

"In the former class it has been held that, at common law, real estate acquired for the use of a canal company could not be sold on execution against the corporation separate from its franchise, so as to destroy or impair the value of such franchise. Gue v. Canal Co., 24 How. 257, 16 L. Ed. 635. And by parity of reasoning it must follow that the tracks of a railroad company, and the franchise of maintaining and operating its road in a public street, are equally inseparable, in the absence of express legislative authority providing for the same."

In Syracuse Water Co. v. City of Syracuse, 116 N. Y. 182, 22 N. E. 385, 5 L. R. A. 546, the opinion reads:

"The corporate rights and the corporeal means of their exercise therefore constitute, as it were, a single body, consisting of property corporeal and incorporeal. Both the power and the means of exercising it are essentially united, and upon such union is dependent the enjoyment as well as the practical value of the franchise." Citing People v. O'Brien and Gue v. Canal Co.

In the case of Gue v. Canal Company, upon which both of these opinions rest, a creditor of a canal company had levied an execution upon a house and lot, some locks in the canal, and some adjoining building lots, all the property of the canal company, and necessary for the conduct of its business. It was there held that, because a sale of the tangible property without the franchise would result in a sacrifice of the property, equity would enjoin the sale in behalf of creditors and stockholders of the corporation, and leave the creditor to an equitable action for a sale of the whole property, including the franchise, upon which the proceeds could be equitably distributed. This case, and the authorities based thereon, are distinguished by Justice KELLOGG in his opinion, in which he says:

"It is obvious that a canal so far differs from a street railway as to make the case cited wholly inapplicable. The tracks of a railway may be removed, but the lock of a canal could not be. There could be no replacement of the property sought to be sold, appertaining to the canal; hence a sale would destroy the franchise. This cannot be the case as to any of the property contemplated by the amendment of the tax law under the name of 'special franchise.'"

This distinction of Justice KELLOGG is clearly overborne by the authorities. The principle of the case of Gue v. Canal Co. has been applied by the courts with equal force to the tracks and equipment of a railroad, which cannot be sold separately from the franchise itself.

See Hammock v. Trust Co., 105 U. S. 77, 26 L. Ed. 1111; Buncombe Co. v. Tommey, 115 U. S. 122, 5 Sup. Ct. 626, 29 L. Ed. 308; Kittel v. Railroad Co. (C. C.) 65 Fed. 861. In that case the opinion, in part, reads:

"It further appears that said sale covers all the construction plant, tools, and construction material belonging to said corporation. In such circumstances, a creditor cannot dissever from the franchise property essential to its useful existence."

In National Foundry & Pipe Works v. Oconto Water Co. (C. C.) 52 Fed. 43, where a specific lien was given to a materialman upon a plant and franchise of a water company, it was held that they "cannot be separated by judicial sale, because of their public use." The judge, in writing the opinion, says:

"The structure here is of the class of which canals, street railways, railroads, telegraph, telephone, electric light and gas plants are examples, and can only be dealt with as an entirety."

But it is urged that the tangible and intangible are not inseparable for the purpose of assessment. Possibly they are not absolutely inseparable. As shown by the evidence, the value of the intangible franchise must be determined by taking the value of the whole property, tangible and intangible, and deducting therefrom the value of the tangible. Thus the determination of the value of the tangible property is a prerequisite to the valuation of the intangible. Their values and use depend upon each other. Those values thus interdependent are given to the state board to determine. They are therefore reasonably connected for the purpose of assessment and taxation. And this is all that is necessary to authorize the legislature to attach the tangible to the intangible property for this purpose. In the Astor Case, above cited, the several avenues, jurisdiction of which was taken from the local assessors and given to the state officers, were outside of Central Park, and not within the jurisdiction of the park commissioners. These avenues might have been left to the local officers to improve. There was no absolute necessity that they be transferred to the park commissioners who were appointed by the central power. Nevertheless, by reason of their intimate relation and connection with the park and with the scheme of park improvement, the legislature was held authorized to take from the local officers functions which had theretofore been local functions, and transfer them to these state officers. If, as part of the park improvement, the legislature had thought best to give to the park commissioners the permanent control of the streets surrounding the park, I apprehend that the right to do so would be recognized by the courts as one reasonably connected with and incidental to the scheme of park improvement which the legislature was authorized to adopt and execute.

Nor do I find any authorities which conflict with the conclusion reached. The learned Presiding Justice deems this case controlled by the case of People against Raymond, in 37 N. Y. 428. That case simply holds that the legislature has no right to abolish the office of commissioner of taxes and assessment of the city and county of New York, and to transfer the duties of that office to one appointed by state authority. It does not hold that his every function is inviolate,

and that no part of his duties may be transferred to state officers if such be reasonably necessary as incidental to some plan which the legislature lawfully seeks to accomplish. The office of commissioner of highways cannot be abolished, and his duties transferred to an officer appointed by the state. That office, equally with the office of commissioner of taxes of the city of New York, is one within the protection of the constitution. Nevertheless it has been frequently held that some of the functions of the office of commissioner of highways may be taken from it and exercised by the state, and in the Astor Case, an act taking from him certain functions was justified because they were incidental to the state plan of park improvement in the city of New York. In the referee's opinion are cited many instances where certain functions are taken from local officers, while the offices themselves are concededly protected under the constitution from destruction by the legislature.

The learned referee before whom this case was originally tried has admonished us of certain rules of construction by which we must be guided in the determination of this question. He says in his opinion:

"There is also a rule, many times announced by judges, that the legislative will is not to be thwarted, as in conflict with the constitution, unless such conflict is clear and undoubted, and that whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction should be adopted. The legislature has supreme legislative power, except as such power is limited in the federal or state constitutions, and we must be able to point to some unmistakable constitutional limitation before such power can be curtailed. A further rule must, however, be observed,—that a thing within the intent of the constitution, if that intent can be gathered from the instrument itself, considered in all its parts, or from the history connected with it, of which a court can take notice, is for all purposes to be regarded as within its words and terms, and that the plain purpose of the constitution will not be thwarted by a too close adherence to its letter."

Guided by these rules of construction, we must not lose sight of the fact that what is protected by the constitution is the local office, and not each separate function thereof. It may be that the legislature would not have power arbitrarily to take from a local officer some of his regular functions, howsoever small. The argument is not without force that a slight arbitrary invasion might be followed by another, until the substance of the office is gradually taken from the locality. Where, however, the functions of a local officer are left substantially unimpaired, to take from him certain of his functions, and give them to the state officers intrusted with the execution of a lawful state purpose, where the transfer is of functions reasonably incidental to the fulfillment of that purpose, in no way offends as against the constitutional prohibition. To hold otherwise, and to rule that no single function may ever be invaded, would materially cripple the power of the state in the institution of public improvements, and would, in my judgment, be a limitation never intended by the framers of the constitution. The legislature has transferred to state authorities the capital execution of criminals. Those functions have been taken from local constitutional officers and given to state officers. To question the constitutional right to accomplish this purpose would be generally recognized as quibbling over the constitutional restriction. The constitution

should receive such liberal construction as will protect the people in the rights intended to be reserved, and at the same time render possible the growth and prosperity of the state. The limitation which the majority of the court has here found is at the most an implied limitation, unwarranted, as I think, either by authority or by any reasonable conception of the intent of the framers of the constitution. I' am impressed with the conviction that to hold this law invalid is to pervert the will of the people of the state, as written in their fundamental law.

CHESTER, J. (dissenting). The special franchise tax law, so called (chapter 712, Laws 1899), amended the tax law (chapter 908, Laws 1896) so that the terms "land," "real estate," and "real property," as used in the tax law, should include not only all surface, underground, or elevated railroads, but "the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways, or public places;" and also the "value of all franchises, rights, authority or permission to construct, maintain or operate, in, under, above, upon, or through, any streets, highways, or public places, any mains, pipes, tanks, conduits, or wires, with their appurtenances, for conducting water, steam, heat, light, power, gas, oil, or other substance, or electricity, for telegraphic, telephonic or other purposes." The amendment further provided that "a franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a 'special franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place, or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise." It was also provided in the amendatory act that "the state board of tax commissioners shall annually fix and determine the valuation of each special franchise subject to assessment in each city, town, village or tax district." The amendment also required the board to return its valuation to the local authorities, to be included in the local assessment rolls, and required the local authorities to enter the valuation of the special franchises so fixed by the state board in the proper place in the local assessment rolls. The act did not interfere with the office of assessors, or other local officers charged with the duty of making assessments. The only power taken from such local officers was the power to assess the tangible property in the streets, highways, or public places, which was defined by the law to be, and to be taxed as, a part of the special franchise.

The most important question in the case is whether the legislature had the power, under the constitution of the state, to take this function from the local assessors. That the legislature had the power to commit to the state board of tax commissioners the function of assessing the intangible property constituting a part of the special franchises is not, I think, open to serious question. Such intangible property was made taxable for the first time in this state by the amendment, and the legislature had the undoubted right to commit its valu-

ation for the purposes of taxation to any agency it might choose, without the impairment of any functions of local officers, because no local officer ever had any power or authority over property of that character for the purposes of taxation.

As to whether or not the legislature could commit to the state board of tax commissioners the power to value the tangible property in the streets, highways, or public places forming a part of these special franchises is a more serious matter. My examination of this question has led me to a different conclusion from that reached by some of my associates, and I will, as briefly as I may, state the reasons for my conclusion:

The home rule provision of the state constitution, which is brought in question here, is found in section 2 of article 10, and is as follows:

"All county officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct. All city, town and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct."

The office of assessor is not mentioned in this section, nor are the functions of any local officer defined therein. While this section expressly secures to the localities the selection of their local officers, it does not in express terms protect the functions of such officers from legislative or state interference. But the appellant's counsel insist, and, no doubt, rightly, that we may read into the constitution, by implication from the history of the state at or prior to the time of the adoption of the constitution, that the assessment of property for the purpose of taxation is a local function. So far I may agree with them, and find ample authority in the decisions of the courts for so doing. But when they insist that under the implied provisions of the constitution such assessment is exclusively a local function, in the sense that the state cannot interfere with it, or confer upon officers appointed by state authority the function of valuing tangible property in the streets constituting part of a special franchise, notwithstanding such property has heretofore been assessed by local assessors, I find myself unable to yield my assent. While an act of the legislature must stand the test as to whether its provisions are counter to the clearly implied as well as to the express provisions of the constitution, yet I cannot conceive it to be the duty of the court to aid in reading into the fundamental law matters of doubtful or uncertain implication, in order thereby to effect the condemnation of an otherwise valid act.

In considering this question, some elementary principles may first be alluded to. The legislative power is absolute and unlimited, except as restrained by the state or federal constitutions. Bank v. Brown, 26 N. Y. 467; People v. Flagg, 46 N. Y. 401; Lawton v. Steele, 119 N. Y. 232, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 813; Chicago, B. & Q. R. Co. v. Otoe Co., 16 Wall. 667, 21

L. Ed. 375. The power to tax is inherent in government, and is a legislative power, limited only by constitutional provisions. Town of Guilford v. Board of Sup'rs of Chenango Co., 13 N. Y. 143; Clarke v. City of Rochester, 24 Barb. 446. The security for the abuse of this power is to be found in the responsibility of the members of the legislature to their constituents, and not in the courts. People v. Mayor, etc., of City of Brooklyn, 4 N. Y. 426, 55 Am. Dec. 266. Cities, counties, and towns are but the instrumentalities for the convenient administration of local government. Upon them, subject to constitutional limitations, the legislature may confer the power to tax to the extent necessary to good government; and the imposition of a tax by cities, counties, or towns for their support is as much an exercise of the taxing power of the state as a tax imposed directly by the state. 25 Am. & Eng. Enc. Law (1st Ed.) 80. The power to assess is but an incident of the power to tax. The function of assessing for the purpose of taxation is a governmental agency for the proper division of the burdens of taxation, and is but one of the elements in rendering the power of taxation effective.

In Town of Guilford v. Board of Sup'rs of Chenango Co., supra, it was said:

"Our state government is an independent existence, representing the sovereignty of the people. The power of the legislature is the power of that sovereignty, and is supreme in all respects, and unlimited in all matters pertaining to legitimate legislation, except in those instances where the people have, in their fundamental law, limited or restricted it. Taxation is indisputably a legislative power. The constitution of this state will be searched in vain for any clause which contains any restriction or limitation on the taxing power of the legislature."

If the legislature possesses such power with respect to taxation, I can see no reason why, with respect to a function which is but a part of the governmental machinery in carrying into effect the laws relating to taxation, the legislature may not lawfully provide, as has been done by the amendment in question, that the state board of tax commissioners may value the tangible property in the streets as a portion of the special franchises made taxable by the amendment. The state has a direct interest in local assessments, for upon these assessments state as well as local taxes are paid. It has an indirect interest in them, so far as they are made the basis of local taxation, because of its regard for the efficiency of local government, and for the well-being of all the municipalities which go to make up the state. At the time of the adoption of the earlier constitutions, when it is claimed that the principle of local assessments became a part of our governmental system, there was not a railroad track, a telegraph line, a gas main, or an electrical subway in existence. The right to assess and tax these various kinds of property in the streets has from time to time, and mostly in comparatively recent years, been conferred upon the local authorities by the legislature. If the legislature can increase the powers and functions of the assessors, as it has done repeatedly, why may it not take from these powers and functions, at least to the extent of that which it has given? If this tangible property in the streets had always been taxable, there would be more force in the contention that the local assessors had a constitutional right to value it for taxation; but

the right to assess it at all has been given since the adoption of the earlier constitutions, and this right is all that has been withdrawn by the act in question. The constitution has not stood in the way of the withdrawal by the state of various functions from many local officers other than assessors, and conferring such functions upon officers appointed by central or state authority. This principle has been sanctioned by the court of appeals in many cases. It was done as to police officers in People v. Draper, 15 N. Y. 532, and People v. Shepard, 36 N. Y. 285; as to firemen in People v. Pinckney, 32 N. Y. 377; as to commissioners of excise in Board v. Barrie, 34 N. Y. 657; as to health officers in Board v. Heister, 37 N. Y. 661; as to officers having supervision of street improvements in Astor v. Mayor, etc., 62 N. Y. 567; as to commissioners of highways in People v. McDonald, 69 N. Y. 362; and as to boards of supervisors in the erection of public buildings in People v. Board of Sup'rs of Oneida Co., 170 N. Y. 105, 62 N. E. 1092. But it is said that the decisions in these cases and in others of analogous character, were justified in the exercise of the police power of the state, and not otherwise. The court, however, failed to put its decision in most of these cases on that ground, nor did it give that question any prominence in any of them. Other sufficient reasons were found for the conclusions reached.

While it is entirely correct to say that the state has a great interest in maintaining good order through an efficient police force, in the protection of property and lives by well-conducted fire departments, in promoting the public health, in the regulation of the liquor traffic, in the maintenance of good roads, and in other public improvements, yet none of these matters are of greater concern to the state than the power to exist, which depends upon the right in the legislature to levy taxes, and, as incidental thereto, to have some power concerning assessments for that purpose. The cases which are cited to support a contrary doctrine are cases where the legislature attempted to abolish local offices in the face of the express terms of the constitution, and confer the functions of such offices upon officers of state selection. The case of People v. Raymond, 37 N. Y. 428, is one of these cases. The appellant relies largely upon that case for its contention that the assessment of property for the purpose of taxation is exclusively a local function. That was an action to determine the title of the defendant to the office of commissioner of taxes and assessments of the city and county of New York, and the only question in the case was as to whether or not an act of the legislature under which the defendant was appointed to that office by the governor and senate violated the home rule provisions of the constitution; and it was held that it did, and that the legislature could not create a new office, and vest the appointment in a central or state authority, when the duties of the office were those of a former county or city officer, made elective by the constitution. While it was said in that case that "there is no question but that the office in question is exclusively a city office," it was not there decided—nor could it have been, for the question was not before the court—that the function of assessing property for the purpose of taxation was exclusively a local function. The case is therefore not an authority for that proposition, nor do I know of any case that is. I think the question is an

open one, and must be decided in this case as a new proposition. That the Raymond Case is not conclusive on this question, it seems to me, is clearly indicated by the court of appeals in the later case of Astor v. Mayor, etc., supra, where it was held that a law that took from local officers, and conferred upon the commissioners of Central Park, who were officers appointed by the legislature, the exclusive care, management, and control, for the purpose of regulating, grading, and improving certain streets in the city of New York, was not unconstitutional, and where it was stated in the opinion of the court that:

"It would be carrying the doctrine of noninterference with local officers far beyond any reported case to hold that in no case whatever could any of the powers existing in a local officer at the time of the adoption of the constitution be taken away without violating the provision cited."

The intangible property constituting a part of these special franchises is made taxable by the amendment in question for the first time. It is of very large value. It is so closely related to, and so inseparably connected with, the tangible property in the streets constituting a part of the special franchises, that it would be very difficult, if not impracticable, to value the intangible separate and distinct from the tangible property. People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684. The state board has not so valued it in this case, and this court has held in an unreported case that a provision in a writ of certiorari requiring that board to state the values upon the tangible and intangible property separately was not justified under the law. Nor is it practicable for special franchises, in many instances, to be valued by local assessors, without extending their functions and jurisdiction beyond their tax districts, for the reason that such franchises frequently cover property extending into several tax districts, and the property in one district would have little value when disconnected from the property in the other districts, but would have great value when taken as a part of the whole. It is also a kind of property requiring expert knowledge on the part of those who are to value it, and knowledge which few local assessors possess. To hold that the legislature cannot commit to a state authority the duty of valuing for the purpose of taxation tangible property in the streets, to the extent permitted by the amendment in question, and under the circumstances existing here, requires, in my opinion, altogether too strict and illiberal a construction of the constitution. I think the legislature had the right not only to subject the large amount of intangible property existing as a part of these special franchises to the taxing power of the state, but also to provide, as it did, in view of the changed conditions, arising from the advancement and progress of our people, from those which formerly existed, for the assessment of this intangible and tangible property together by state officers, and that in so doing it has still left to the localities as large a measure of home rule as they enjoyed in this respect when the local function of assessing property for taxation became a part of our system.

So far reference has been had to the validity of the amendment under the state constitution. With reference to its validity under the federal constitution, and to all the other questions discussed by the learned referee in the various opinions written by him, I agree with his

reasoning, and also with his conclusion and that of the special term that the amendment is a valid exercise of legislative power.

I think the order should be affirmed, with costs.