WILLIAM B. ASTOR, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK et al., Appellants.

The provisions of the act of 1865, "for the improvement of part of the city of New York" (chapter 564, Laws of 1865), which confer upon the commissioners of Central park the exclusive care, management and control of a portion of Sixth avenue and certain streets, for the purpose of regulating, grading and otherwise improving, is not a violation of that provision of the State Constitution (art. 10, § 2) which directs that all city officers, whose election or appointment is not provided for therein, shall be elected by the electors of the city or appointed by authorities thereof designated by the legislature.

That constitutional provision does not prohibit the legislature from clothing officers appointed by it, for the purpose of carrying out a public improvement, with power to perform acts which have an especial relation to and connection with such improvement, simply because the power to perform such acts, was, at the time of the adoption of the Constitution, vested in local officers elected by the people.

*In re Com. of Central Park* (35 How. Pr., 255) limited.

An assessment for regulating and grading said avenue, made under said act, is not void because all the commissioners did not meet and consult in reference thereto; it is sufficient that it was determined upon by a majority, at a meeting to attend which all were notified; and it is to be presumed that notice was given.

The provision of the act of 1872, amending said act of 1865 (chap. 299, Laws of 1872), requiring the comptroller to deposit to the credit of the board of commissioners such sums as the board should, from time to time, require "for the payment of one-half of the costs and expenses of any work," and providing for the payment thereof by the issue of city bonds, did not apply to work done and paid for prior to the passage of that act, and did not affect assessments already made therefor or in

progress, or relieve property liable to be assessed from one-half the expense of the improvement; but in the absence of proof that no further expenditures were necessary will be held to relate simply to future and prospective wants.

(Argued June 7, 1875; decided September 28, 1875.)

APPEAL from judgment of the General Term of the Court of Common Pleas, for the city and county of New York, affirming a judgment in favor of defendant, entered upon a decision of the court at Special Term.

This action was brought to restrain the collection of an assessment upon certain property of plaintiff and to vacate and set aside the assessment as a cloud upon plaintiff's title.

The facts, as found by the court, are substantially as follows:

That on the 2d day of March, 1868, the commissioners of the Central park, at an adjourned meeting, of which all the members of the board had due notice, adopted the following resolutions by the affirmative votes of five of the members of said board, three being absent. (The prior meeting was held on the 26th day of February, 1868, at which meeting six of the members of said board were present and acting.)

"*Resolved*, That the comptroller of the parks be authorized, on behalf of this board, to carry into execution by contract or otherwise, as allowed by law, the regulation, sewerage and drainage of the Sixth avenue, from the southerly side of One Hundred and Tenth street to Harlem river, except the surface plan thereof, according to such grade as has been approved by the board.

"*Resolved*, That the subject of a plan for the improvement of the Sixth avenue, from the southerly side of One Hundred and Tenth street to the Harlem river, be referred to the special committee heretofore appointed on the Seventh avenue improvement plan, with power to determine on the plan of surface improvement for said Sixth avenue, and that when said committee have decided thereon, the comptroller of the park be authorized to carry the same into execution."

That the resolution above referred to, relative to the

Seventh avenue improvement plan, was duly adopted at a meeting of the board of commissioners of the Central park, held on the 16th day of March, 1867, of which the following is a copy:

" *Resolved,* That the several plans for the improvement of the Seventh avenue, from the park to the Harlem river, be referred to a special committee of three members, with power to determine upon the plan of surface improvement for said avenue, and that when said committee have decided thereon, the comptroller of the park be authorized to carry the same into execution."

That the following resolution was adopted by the commissioners of the Central park, on the 2d day of July, 1867, five commissioners voting therefor:

" *Resolved,* That the commissioners of the Central park hereby change the grades of all the streets between the Fifth avenue and the Eighth avenue, from One Hundred and Eleventh street to One Hundred and Thirty-fifth street, both inclusive; and also the grade of the Sixth avenue, between One Hundred and Tenth street and One Hundred and Thirty-fifth; and fix and establish the grades of the avenue St. Nicholas, from the Sixth avenue to the Eighth avenue, and also of the Sixth avenue, from One Hundred and Thirty-fifth street to the Harlem river, and also of the Eighth avenue, from One Hundred and Thirty-fifth street to One Hundred and Fifty-fifth street, and also of all the streets between the Fifth avenue and the Eighth avenue, from One Hundred and Thirty-sixth street to One Hundred and Fifty-fifth street, both inclusive, as the same are shown on a map entitled 'map of the grades of streets and avenues, changed, fixed and established by the commissioners of the Central park, in pursuance of section 1 of chapter 367 of Laws of 1866, dated New York, May 27, 1867, and signed John J. Serrell.' "

That under and pursuant to the resolution, passed on the 2d day of March, 1868, the work was done by contract and days' work, as provided for therein.

That on the 2d day of August, 1872, an assessment for said

regulating and grading of Sixth avenue, from One Hundred and Tenth street to the Harlem river, was confirmed by the board for the correction and revision of assessments, and an assessment was thereby imposed upon certain specified real estate of the plaintiff. That the entire cost of the work was assessed upon the property benefited, as mentioned in the said assessment list. That the payments for the said work were made at different times, the last payment being made March 11, 1871. These payments were all made out of moneys deposited by the comptroller of the city of New York to the credit of the commissioners of the Central park.

The assessment list was received by the board of assessors from the department of public parks, on the 20th day of June, 1871, and was advertised for objections on the 1st day of July, 1871, and it was sent to the bureau of revision and correction on the 10th day of August, 1871, and confirmed by said board on the 2d day of August, 1872.

It was admitted by the plaintiff, that every thing in reference to this assessment, except the confirmation, took place before the passage of the statute. (Chap. 299, Laws of 1872.)

The court found, as conclusions of law, that plaintiff has not shown that the aforesaid meetings of the commissioners of the Central park, at which the resolutions above set forth were passed, were irregular or without due notice previously given to all the members of the board. That the delegation by the board of Central park commissioners to the comptroller of the park, of the authority specified in the foregoing resolutions of March 2, 1868, was irregular and unlawful and was not cured by their subsequent adoption of his acts; but it was remedied by the act passed May 7, 1872 (chap. 580 of the Laws of 1872). That the act of 1872 in no respect relieved the plaintiff as owner and occupant of lands benefited by such improvement, or his property from assessment to the extent of such benefit, nor entitled him nor his property to relief or credit for or in respect to any portion of the sums the comptroller was by that act authorized to borrow for the expenses of such improvement. That the plaintiff

had shown no legal ground for the exemption of his property from the assessment in question, and thereupon directed a dismissal of the complaint.

*Charles E. Miller* for the appellant.   Chapter 564 of the Laws of 1865, in so far as it transfers to the commissioners of the Central park the power to regulate the grade of Sixth avenue, is unconstitutional.   (Const., art. 10, § 2; *People* v. *Draper,* 15 N. Y., 532; *People* v. *McKinney,* 52 id., 374; *People* v. *Albertson,* 55 id., 50; *People* v. *Pinckney,* 32 id., 382; Laws 1857, chap. 771, § 3; Laws 1859, chap. 349, § 3; Laws 1861, chap. 88, § 1; Laws 1813, chap. 86, §§ 175, 176; Valentine's Laws, 812, 1190, 1192; *In re Cent. Pk.,* 35 How. Pr., 275; *People* v. *Acton,* 48 Barb., 524, affirmed Ct. App.; *Schuster* v. *Bd. of Health,* 49 Barb., 450; *Wenzler* v. *People,* Ct. App.)   The commissioners of Central park could not delegate to a special committee the power to determine on the plan of surface improvement for Sixth avenue.   (*Thompson* v. *Schermerhorn,* 6 N. Y., 92; Dillon Mun. Corp., 108, § 60; 588, § 618.)   The objection that all the commissioners did not meet and consult with reference to the regulating and grading of the avenue and the contract therefor, is fatal. (2 N. Y. Stat. at Large [Edm. ed.], 575, § 27; *In re Blodgett,* cited 46 N. Y., 180; *Palmer's Case,* 1 Abb., 30.)   The board of assessors erred in imposing the entire expense of the work upon the property owners.   (Laws 1865, chap. 564, p. 1133; Laws 1867, chap. 697, p. 1748; Laws 1872, chap. 299; *In re Folsom,* 56 N. Y., 66; Laws 1867, chap. 580; Laws 1869, chap. 890; Laws 1866, chap. 367, § 7; *Ely* v. *Holton,* 15 N. Y., 595; *Hartung* v. *People,* 26 id., 167–172; *Homer* v. *Lyman,* 4 Keyes, 237–252.)   More than one-half the expense having been assessed upon the property owners, the whole assessment is void.   (Blackwell on Tax Titles, 160, *et seq.*)

*William Barnes* for the respondents.   Chapter 564 of Laws of 1865, which conferred upon the commissioners of Central park power to regulate, grade and improve a part of

Sixth avenue, is not unconstitutional. (*Kellinger* v. *Forty-second St. R. R. Co.*, 50 N. Y., 209 ; *People* v. *Draper*, 15 id., 543, 545 ; *People* v. *Albertson*, 55 id., 54 ; *In re Cent. Pk.*, 35 How. Pr., 275 ; *Stewart* v. *Laird*, 1 Cranch, 299 ; *Rogers* v. *Gardiner*, 2 Mass., 428 ; Cooley on Const. Lim., 67, 69 ; Ames' Science Jurisprudence, 476, 479.) The objection that all the commissioners did not meet and consult with reference to the regulating and grading and the contracts therefor, is not fatal to the assessment. (*In re Anderson*, Ct. App., April, 1875 ; *Rae* v. *Mayor, etc.*, N. Y. Supr. Ct. ; *In re Phillips,* Gen. Term ; *In re Smith*, Ct. App., Peckham, J.)

Miller, J. This action was brought for the purpose of vacating assessments made upon the plaintiff's lots in the city of New York, for the regulation and grading of Sixth avenue from One Hundred and Tenth street, the north end of the Central park, to the Harlem river, and to obtain an injunction restraining the collection of said assessment. The proceedings were conducted by virtue of the provisions of chapter 564, Session Laws of 1865. The third section of the act authorized and directed the commissioners of Central park, on behalf of the mayor, aldermen and commonalty of the city of New York, to apply for the appointment of commissioners of estimate and assessment for the opening of said avenue as widened. By the fourth section they were intrusted with the care, management and control of all streets between the southerly side of One Hundred and Tenth street and the Sixth and Seventh avenues and the Harlem river for the purpose of regulating, grading and improving the same as they may deem that the public interest may require. The effect of these enactments, practically, was to make the improvements contemplated in connection with and as a part of the park which had been placed under the control of the commissioners.

The act cited is alleged to be in violation of the second section of the tenth article of the Constitution of this State,

which provides, among other things, that, " all city, town and village officers whose election or appointment is not provided for by this Constitution shall be elected by the electors of such cities, towns and villages, or of some divisions thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose."

The objection presented is, that the authority attempted to be conferred upon the commissioners of the Central park was unconstitutional, for the reason that as the power to make the improvement in question was vested in the mayor and aldermen of the city, who were elective officers at the time of the adoption of the Constitution of 1846, their authority could not be transferred to officers holding by appointment under an act subsequently passed.

The question to be determined is, whether the legislature can invest the commissioners of the Central park with the power conferred by the act in question, which has relation to a particular avenue and certain streets which are intimately identified with the park itself, so as to constitute and form an important part of the improvements which are essential to complete the general plan of the work. There is no apparent objection to such a power under the circumstances presented. It does not transfer the general powers of local officers elected by the people, which existed at the time of the adoption of the Constitution, in violation of that instrument, or confer them upon other officers not elected ; but merely confers authority in a particular case to perform acts which have an especial relation to and connection with the general purpose and design of the public improvement, to carry out which the board of commissioners was organized. It would be carrying the doctrine of non-interference with local officers far beyond any reported case, to hold that in no case whatever could any of the powers existing in a local officer, at the time of the adoption of the Constitution, be taken away without violating the provision cited. If the doctrine contended for is correct it would be in conflict with the course of legislation, in regard to the Central park, from its first organization. By

chapter 771, Session Laws of 1857, provision is made for the government of Central park ; and by the fourth section the commissioners are vested with power to govern, manage and direct the said Central park, and to lay out and regulate the same with all the authority conferred and possessed by the common council of the city in respect to public squares, etc. This necessarily involves the right to grade all streets or public avenues which constitute a portion of, or are connected with, the Central park.     By chapter 565, Session Laws of 1865, the commissioners are vested with exclusive authority to lay out streets, etc., within certain limits ; and it is made their duty to lay out a public road or drive which is designated, to perform certain acts which are particularly mentioned and which it is reasonable to suppose were essential to carry out the purposes in view.     These powers have long been exercised, without any legal decision adverse to their validity.

The learned counsel for the plaintiff relies upon the case of *The Commissioners of Central Park* (35 How., 255) as sustaining the views contended for.     It was there decided that the act last cited, so far as it authorizes the commissioners instead of the common council of the city of New York to make an application to the court for the opening of a road or public drive, was not unconstitutional, and the authority conferred on the commissioners to make such application is not that of any *local* officer.     Nor does it authorize them to discharge the duties of *any office* but provides for a mere ministerial act.     In the opinion the learned judge says that, " so far as the objection is taken here we are to treat it as a mere authority for such a purpose to make an application for the opening."     If the commissioners have the power to apply to the court to open streets, there is no good reason why they cannot be invested with power to grade and regrade one or more avenues or streets which adjoin the park.

Some doubt is expressed in the case last cited, as to the power of the legislature to take from the common council

the power to grade streets, which has been exercised by them, and confer it on State officers. But the remarks made are general in their character and may be considered properly as referring to a transfer of *all power* to grade streets from the common council to the commissioners, and not to such streets as may be connected with the improvement of the park and its surroundings. I do not understand that this authority, or any of the cases cited, sustain the doctrine that the act in question violates the Constitution.

Questions affecting the constitutional validity of an act of the legislature should be most carefully considered, and courts should hesitate in pronouncing a law unconstitutional and void, unless such a construction is clearly warranted beyond any reasonable doubt. It is only when an act of the legislature plainly conflicts with the organic law that it should be disregarded and set aside. The wisdom, policy and discretion of the law makers in the enactment of a statute are not the subject of review, and no such considerations can enter into the determination as to the constitutionality of a law which has been passed. Every presumption is in favor of the validity of the enactment; and this cannot be rebutted by unwarranted surmises as to some secret intention which, possibly, may have operated upon the framers, which is not apparent. These rules should more especially be invoked, and prevail, where vast interests may be affected by a judicial determination adverse to the law, and the rights of the public and individuals seriously injured and impaired.

Without passing upon the question how far the legislature may transfer the powers of a municipal corporation, exercised by the common council, to other bodies or officers, we think that in this particular case the act in question did not violate the Constitution. It is not necessary to go beyond this; nor are we required, in order to sustain this interpretation of the act, to hold that all the powers of the common council relating to the regulation and paving of streets can be taken away and conferred upon the park commissioners.

The proceedings are also assailed upon the ground that the

commissioners could not delegate to a special committee the power to determine on the plan of surface improvement for the Sixth avenue. By the resolution of March 2d, 1868, the comptroller of the parks was authorized, on behalf of the board, to carry into execution, as allowed by law, the regulation, etc., of the avenue, except the surface plan thereof, according to such grade as had been approved by the board; and the subject of a plan for the surface improvement was referred to a committee with power to determine the same; and when decided upon, the comptroller of the park was authorized to carry the same into execution. It appears that the grade had been already fixed by a resolution of the board, passed upon the 2d of July, 1869, and that the assessments in question were not laid for the "surface improvement for the Sixth avenue," but for "regulating and grading" the same. So far then as the resolution has any reference to the surface improvement, which was not made at the time, and was in no way connected with these assessments, it had nothing to do with the case, and the power of the commissioners in this respect is immaterial and not the subject of inquiry.

The objection that all the commissioners did not meet and consult in reference to the regulating and grading of the avenue is not well founded. It is enough that they were all notified, and, as the case shows that a meeting of a majority was actually held, it is to be presumed that notice was given. It is unnecessary to cite authorities to establish that where a majority meet after notice the actual attendance of all is not required. The onus of establishing a substantial error devolves upon the party making the objection. (*In re Anderson*, 60 N. Y., 457.) In the absence of affirmative proof to the contrary, the presumption is that the commissioners did. all meet, or, what is equivalent to it, that the absent members had notice of the meeting which was held.

A claim is also made that the board of assessors erred in imposing the entire expense of the work upon the property owners; that by chapter 299, Session Laws of 1872, one-half of the expenses of the improvement which had been incurred,

and in fact paid, should not be assessed upon the owners or occupants of lands benefited thereby, and that they were to be relieved from the same by the payment thereof by the tax-payers at large. A recurrence to the several laws bearing upon the subject is essential to a proper understanding of the real aspect of the question. The act of 1865 (chap. 564, *supra*), authorized the work to be done. The fourth section provided that the expenses of the improvement be assessed upon the owners and occupants of lands benefited thereby; that the moneys collected be deposited, as collected by the comptroller, to the credit of the commissioners, and applied in payment of the work. In case the commissioners required moneys during the progress of the work, before the same was collected, they were authorized to obtain advances on the faith of moneys to be collected by assessment. By chapter 697, Session Laws of 1867, section 8, the comptroller of the city was authorized and directed to deposit to the credit of the commissioners such sums of money as the board might require for this and other work; and bonds were to be issued, and when assessments were collected from property benefited they were pledged for the redemption of the bonds.

By Session Laws of 1872 (chap. 299), the act of 1865 was amended by inserting two sections after the fourth section thereof. And by the act of 1872 the comptroller was authorized and directed "to deposit to the credit of the board of commissioners such sums as such board shall *from time to time require* for the payment of one-half of the costs and expenses of any work"  *  *  *  "furnished under any contract, or otherwise, for the regulating grades, paving or improving Sixth avenue, as mentioned in the first section of said act." And provision was made for the raising of the money by the issue of city bonds. Prior to the passage of this act, the work done had been paid for out of moneys deposited to the credit of the commissioners; and the assessments made by the board of commissioners, and every thing in reference to the same, had been done, except the confirma-

tion of the report. The act of 1872 contains no provision which in any way affects assessments already made or in progress.

A careful perusal of the provision cited shows that it was not intended to relieve the property liable to be assessed from the expenses of the improvement, and to charge one-half thereof upon the city at large. The reasons which induce such a conclusion are quite manifest. There is nothing in the phraseology of the act which directly authorizes any such abatement of the expense to the lot owners, and no language employed from which it might fairly be inferred. It is not reasonable to suppose that the legislature would thus indirectly, and without any express provision whatever to that effect, make a radical change in the principle of assessments which had been adopted in this case. Had such a design been contemplated, it would have been expressed in plain, clear and intelligible phraseology, and not left to mere idle conjecture. A few simple and explicit words would have expressed an intention to discharge the property assessed from one-half the liability, if such an object was really in view; and such intention is not to be inferred from mere speculation as to the design of the law-makers.

The amendments of the act of 1865, by the act of 1872, were not inconsistent with the prior enactments in reference to the subject. The fourth section of the act of 1865 provided for the collection of the assessments, and the application of the moneys, and in case money was required during the progress of the work, before collected, for the advancement of the same. The act of 1867 made further provision for advances, by raising the moneys upon bonds, for which the assessments were pledged.

The act of 1872 then followed, making provision, as we have seen, for such sums of money as the board might "from time to time require." This related to the future, and not to the past. It did not provide for what had been paid previously, but what payments might be thereafter required in the prosecution of the improvement. It does not appear that every thing had been done which was necessary to com-

plete the work.   The first section of the act of 1865 provides
for the widening of the avenue; the fourth, for fixing grades,
paving, etc.   The assessment was for regulating and grading,
and it is not shown that the paving had yet been done.   A
further expenditure might therefore be necessary ; and it is a
fair and just interpretation to hold, in the absence of any
thing to the contrary, that the act of 1872 related only to
future and prospective wants, and not to those which had
already been provided for by law.   In fact, as the assessments
had been pledged for the payment of bonds already issued,
the presumption is strong against any intention to affect or
impair the security of the bonds by means of which funds
had been realized to defray the expenses of the work already
performed.

The interpretation given renders all the acts referred to
consistent and harmonious, while a different one would neces-
sarily lead to much embarrassment and confusion.

The learned counsel for the plaintiff seeks to uphold a
construction in favor of an intention of the legislature to
relieve the parties assessed, by a reference to the provisions
of other acts of the legislature where lot owners were
exempted from a portion or the entire assessment for expenses
incurred.   (See chap. 565, S. L. 1865, §§ 4, 8 ; chap. 380,
S. L. 1867; chap. 890, S. L. 1869.)   In these cases the pro-
visions of the various acts were entirely plain, and nothing
was left to inference or deduction from the circumstances
existing.   They have no application to the case now pre-
sented ; and relief from assessments can only be obtained
by legislative enactment when it clearly discloses an intention
to grant such relief.

In view of the remarks already made, it is not necessary
to consider at length some other points and suggestions made
upon the argument.

No sufficient reason being shown for the reversal of the
judgment, it must be affirmed.

All concur ; Allen, J., concurring in result.

Judgment affirmed.