by both the plaintiff and the defendant. The decree herein provides, among other things, as follows, viz.:

"That Clifford Boesé, the receiver, state his account before George E. Morgan, who is hereby appointed referee for that purpose, and for the purpose of taking proof of any claim presented or of any contested claim presented; and said referee shall make his report to this court with reasonable speed, and the question of the costs and expenses of said reference is left until the coming in and confirmation of said referee's report."

Mary A. King presented a claim to the referee, which was contested, and the referee found in her favor.

It is urged in opposition to this motion that said Mary A. King should take up the report and pay said fees. It seems to me that this motion is somewhat premature, as the decree expressly provides that the question of the expenses of the reference shall be "left until the coming in and confirmation of said referee's report." No motion has, apparently, yet been made for the confirmation of said report; and the defendant's attorney urges that the motion be denied on that ground, while the plaintiff's attorney contends that it should be denied on its merits. I am inclined to the opinion that this motion should be denied, without costs, and with leave to renew. It is true that the referee is not bound to part with the report without payment of his legal fees. See Geib v. Topping, 83 N. Y. 48. But it is clearly for his interest to arrive at some arrangement with the parties, and permit his report to be moved for confirmation, as, in order to prevent the termination of the reference by notice, and the loss of his fees, as prescribed by section 1019 of the Code, the referee's report must be actually delivered to the attorney of one of the parties, or filed with the clerk, within 60 days from the time the matter was finally submitted, and an offer by the referee to deliver his report to the successful party on payment of his fees within the time limited is not equivalent to a delivery. See Little v. Lynch, 99 N. Y. 112, 1 N. E. 312. As stated by the court of appeals in this case:

"Upon filing the report the referee may doubtless maintain an action for his fees. The acceptance of a reference is a voluntary act, and the referee may decline the reference; but, if he accepts it, he must rely for the payment of his fees upon the interest of the prevailing party to take up the report, and, if he omits to do this, upon his common-law action to recover them, after putting himself in a position to maintain it by filing the report."

Motion denied. No costs.

---

(31 Misc. Rep. 330.)

TOWN OF LYSANDER et al. v. SYRACUSE, L. & B. RY. CO. et al.

(Supreme Court, Special Term, Onondaga County. April, 1900.)

STREET RAILWAYS—BRIDGES—LOCAL AUTHORITIES—CONSENT.

Under Laws 1896, c. 899, tit. 7, § 1, and title 19, § 1, making the village of Baldwinsville a separate highway district, exempt from the superintendence of any one except its trustees, but providing that the granting of such power "shall not be construed as relieving the towns of Lysander and Van Buren, or commissioners of highways of said towns, from the expense of constructing or repairing any bridge within the bounds of said towns, though such bridge may be within the territorial limits of Baldwinsville," the commissioners of highways of such towns, and not the

trustees of the village, are the "local authorities having the control" of the bridge over the Seneca river, in the village of Baldwinsville, within the meaning of General Railroad Act (Laws 1890, c. 565) § 91, prohibiting the construction of a street railroad until the consent of the local authorities having the control of the highway shall have been obtained.

Action by the towns of Lysander and Van Buren against the Syracuse, Lakeside & Baldwinsville Railway Company and the Syracuse Construction Company to enjoin the construction of a street surface railroad across the bridge over the Seneca river. Motion by defendants to vacate a temporary injunction. Motion denied.

William Nottingham, for the motion.

Ray B. Smith, opposed.

ANDREWS, J. In the year 1865 the towns of Lysander and Van Buren, aided by the county of Onondaga, built a highway bridge across the Seneca river, on the dividing line between the two towns. It was, however, wholly within the limits of the village of Baldwinsville. On April 25, 1898, the trustees of the village granted to the defendant railway company permission to construct and operate its road upon said bridge. No consent was obtained from the commissioners of highways of the towns, and no work was actually done under this permit. In 1899 the two towns, at their joint expense, replaced the old bridge with a new one, and it is to prevent the crossing of this bridge that the present action is brought.

Section 91 of the general railroad act (Laws 1890, c. 565) prohibits the construction of a street railroad until the consent of the local authorities having the control of that portion of the highway upon which it is proposed to build the road shall have been obtained. Whether in this case such local authorities are the trustees of the village, or the commissioners of highways of the towns, is the point at issue. The answer to this question depends largely upon the meaning of the various acts relating to the village of Baldwinsville. The village was incorporated in 1848, in pursuance of chapter 426 of the Laws of 1847, entitled "An act to provide for the incorporation of villages." By this act the trustees were made commissioners of highways, within the limits of the village, whenever the same should constitute a separate road district. Chapter 350 of the Laws of 1850 did create the village such a separate road district, but provided that its trustees should not be required to erect, maintain, or repair the bridge across the Seneca river. That duty was left to the towns. Under these acts the commissioners of highways of the towns continued to be the local officials in control of the bridge. While, in general terms, their authority was conferred upon the village trustees within the corporate limits, and the bridge was within such limits, yet where the power and the duty to construct, maintain, or repair any portion of the highway was reserved, it can hardly be said that any control thereof remains. The phrase describes succinctly the relations of the commissioners to the roads in their district. Where they no longer construct, maintain, or repair them, there is substantially nothing left for them to do in this connection. This has long been, I think, the practical construction given to similar statutes,

and it is not entirely without authority. The court of appeals has said that the local authorities to whom the statute refers, as the source of consent to be given, are the officers of the city, town, or village whose duties and powers relate to the supervision, care, and maintenance of the streets and highways. In re Rochester Electric Ry. Co., 123 N. Y. 351, 25 N. E. 381. When the village charter came to be amended in 1888, the situation was emphasized by the insertion of an express provision which provided in so many words that the commissioners of the towns should retain power and control over bridges, and that the expense of constructing and repairing the same should remain a town charge, although they should be situated within the territorial limits of the village. Laws 1888, c. 330, tit. 8, § 24. This law is altered, however, the defendants claim, by chapter 899 of the Laws of 1896,—an act which revises and amends the charter of the village. As sustaining their contention, they quote section 1 of title 7 of that act, which provides that the village shall constitute a separate highway district, exempt from the superintendence of any one except its trustees. This section is, however, merely a repetition of the corresponding section of the act of 1888. Section 1 of title 9 of the act of 1896 repeats this clause in a somewhat fuller form, and then follows this provision:

"Nothing in this act giving the board of trustees * * * power to make and repair bridges within the village bounds, or making them commissioners of highways, or making the territory of the village a separate road district. shall be construed as relieving the towns of Lysander and Van Buren or commissioners of highways of said towns from the expense of constructing or repairing any bridge within the bounds of said towns, though such bridge may be within the territorial limits of said village of Baldwinsville; but such towns or commissioners shall remain liable to and charged with the duty of constructing, maintaining and repairing such bridges."

The law, therefore, as it existed after 1896, differed from the earlier statutes only in that, after conferring upon the trustees the powers of commissioners of highways, it declared that they should exercise these powers free from the supervision or control of any one. It differed from the act of 1888 only in that the legislature omitted the express provision that the commissioners should retain power and control over the bridges, as well as the duty to construct, maintain, and repair them, and in that it repeats the clause exempting the village highways from the jurisdiction and superintendence of any one except the trustees. Under this state of facts, I do not think the contention of the defendants that the village trustees are the officials designated by the statute can be maintained. Such a construction would be an exception to the general rule, and one that the statute of 1896 does not seem to require. The mere omission of a clause, easily explainable on other theories, is too slight a basis to support the defendants' argument. The design may have been to prevent disputes as to whether the police powers of the village extended over the bridge. There probably is a species of dual control over it. The village authorities are given powers in regard to the village streets. They may, for instance, license street performances, compel the hitching of animals, stop immoderate driving, prohibit the incumbering of the streets, provide for their drainage, license peddlers, light them,

survey them. For such purposes the bridge may be a part of the streets. But they all are mere police powers vested in the trustees, not as commissioners of highways, but in virtue of their duty to provide for order and good government within the corporation. They are exercised on the highways, and in connection with them. But, after all, the substantial rights in connection with the streets rest in those who make, maintain, and repair them. The officials who act in these matters are, I think, the ones in control, within the meaning of the railroad law and the constitution, not those who may enforce village by-laws or regulations thereon. This would, at least, seem to be the reasonable construction to be given to the act. The authorities who were bound to maintain and repair the bridge should certainly be the ones in whose discretion is vested the power to consent to its use in a manner that is likely, to some extent, at least, to affect its stability. I am, therefore, of the opinion that the motion to vacate the injunction should be denied, with costs.

Motion denied, with costs.