(110 App. Div. 378.)

### WILCOX v. McCLELLAN, Mayor, et al.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. MUNICIPAL OFFICERS—OFFICES—STATUTORY PROVISIONS—VALIDITY.

    Laws 1905, pp. 1533, 1548, 1550, cc. 629–631, transferring from the board of aldermen to the board of estimate and apportionment the authority to consent to the use of the public streets by corporations having franchises therefor, subject to the consent of the local authorities, merely extending the powers of the board of estimate and apportionment created by Laws 1873, ·p. 517, c. 335, § 112, and continued by the Greater New York Charter, with authority as expressly given·by sections 48 and 74 thereof (Laws 1901, pp. 26, 38, c. 466) to prescribe the conditions on which franchises may be granted, do not constitute a legislative appointment of the board of estimate and apportionment to office to perform new functions, by a transfer of duties from the board of aldermen to the board of estimate and apportionment, not germane to the duties of the latter board when elected, in violation of Const. art. 10, § 2, declaring that all city officers whose election or appointment is not provided for by the Constitution shall be elected by the electors or appointed by such authorities as the Legislature shall designate, when construed with Const. art. 8, § 1, authorizing the Legislature to enact special laws for municipalities.

2. SAME.

    The statutes are not in conflict with Const. art. 3, § 18, authorizing the Legislature to pass general laws providing for the construction and opera-

tion of street railroads on the consent of the local authorities; the Legislature having the right to designate the local authorities whose consent is required, and the board of aldermen having no right to retain control over the streets for the purpose of giving such consent.

**3. SAME.**

Const. art. 3, §§ 26, 27, authorizing the transfer of the power of the board of supervisors in the counties comprising Greater New York to the "municipal assembly, common council, board of aldermen, or legislative body of the city," and authorizing the Legislature to confer further powers of legislation and administration on boards of supervisors, do not render the statutes invalid, for the board of supervisors of New York county never had control of the streets within the limits of the city, and, though the board is the authority whose consent is required for abutting property owned by the county, it is not the local authority having control of streets, whose consent is required.

**4. CONSTITUTIONAL LAW—DETERMINATION OF CONSTITUTIONAL QUESTIONS.**

The question of the validity of Laws 1905, p. 1550, c. 631, amending the rapid transit act by designating the board of estimate and apportionment as the local authority to consent to the construction of railways, and providing that a majority of 16 votes shall suffice, while Laws 1905, pp. 1533, 1548, cc. 629, 630, amending the Greater New York Charter, passed concurrently therewith, require a three-fourths vote, insuring a majority of the members, and the question of the right of the deputies to sit and hear applications for consent can only be determined after a consent or refusal has been made, and will not be determined in a suit to restrain the board from acting on applications.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 43.]

Appeal from Special Term, New York County.

Action by Clermont H. Wilcox against George B. McClellan, as mayor, and others. From a judgment dismissing the complaint on demurrer, and from an order denying a motion for an injunction and vacating a temporary injunction restraining defendants, as the board of estimate and apportionment, from taking any action on applications of the board of rapid transit commissioners for the consent to the construction of rapid transit railways along the routes referred to in the applications (95 N. Y. Supp. 941), plaintiff appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

L. Laflin Kellogg, for appellant.

Theodore Connoly, for respondents.

Wm. D. Guthrie (Edw. M. Shepard, Paul D. Cravath, and Chase Mellen, on the brief), for Union Ry. Co. of New York and Southern Boulevard R. Co.

George L. Rives (Albert B. Boardman, on the brief), for board of rapid transit railroad commissioners for city of New York.

LAUGHLIN, J. The material allegations of the complaint show: (1) That the plaintiff is duly qualified to maintain this action as a taxpayer; (2) that the defendants by virtue of their respective offices, to which they were elected at the general election held in November, 1903, for terms of two years from the 1st day of January, 1904, constitute the board of estimate and apportionment of the city of New York; (3) that the members of the board of aldermen of the city of New York were elected at the same time and for the same period as the defendants; (4)

that on the 26th day of May, 1905, chapters 629, 630, 631, pp. 1533, 1548, 1550, of the Laws of 1905, were enacted, to take effect immediately, transferring from the board of aldermen to the board of estimate and apportionment the authority theretofore vested in the board of aldermen to consent under section 18 of article 3 of the state Constitution and under statutes of the state to the use of the public streets by certain corporations authorized by the Legislature to use the streets upon obtaining the consent of the "local authorities" of the city; (5) that the board of estimate and apportionment has received an application from the board of rapid transit railroad commissioners for consent to the construction of underground railways in the city of New York along specified routes and according to certain plans presented, and has entertained said application and fixed a time and place for hearing the same pursuant to the authority conferred by said chapters of the Laws of 1905, and will take action thereon and grant their consent unless restrained by the court; (6) that the plaintiff has no other remedy at law or in equity to prevent the contemplated action. The plaintiff further alleges that the defendants are acting wholly without authority, for the reason that the statutes thus transferring jurisdiction in the premises from the board of aldermen to the board of estimate and apportionment are unconstitutional and void on the grounds: First, that they violate the home rule principle secured to cities by section 2 of article 10 of the state Constitution; second, that they violate section 18 of article 3 of said Constitution.

The learned counsel for the appellant concedes that the Legislature intended to transfer, and we deem it quite clear that it has transferred, if it had the constitutional right so to do, all the authority previously vested in the board of aldermen with respect to the control of the public streets, squares, and places, at least with the exception of the police power to regulate the use thereof and to keep the same free from obstructions, as distinguished from the authority to improve and the duty to keep in repair, and with respect to granting consent on such applications. Therefore it becomes unnecessary to consider in detail the various charter provisions with respect to the power of the board of aldermen in the premises before such power was taken away, or with respect to the power conferred on the board of estimate and apportionment in the premises by these several acts. It is very clear that the Legislature intended to constitute the defendants, as the board of estimate and apportionment, the "local authorities" for the purpose of consenting in behalf of the city to the use of the public ways and places by corporations having a franchise from the state therefor, subject to the consent of the municipal or other local authorities, and sufficiently vested said board with control of the streets and with such authority, provided it could do so constitutionally. The able review, by the learned counsel for the respondent and by the learned counsel who took part in the argument and filed briefs by leave of the court, of statutory powers from time to time conferred on the board of estimate and apportionment by which its authority was deliberately greatly extended, removes any doubt that might exist as to the good faith of this legislation; but as we have no jurisdiction to question the motives of the

Legislature, and may only inquire whether the legislation is constitutional and was duly enacted, that is immaterial.

The first point made by the appellant is that these statutes violate the provisions of section 2 of article 10 of the state Constitution, which are as follows:

"All county officers whose election or appointment is not provided for by this Constitution, shall be elected by the electors of the respective counties or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct. All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or apointed by such authorities thereof, as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

The precise ground of the attack made upon these statutes under section 2 of article 10 is that the Legislature has taken from one body of local elective officers before the expiration of their terms of office certain powers and duties, and transferred them to another board of local elective officers before the expiration of the terms of the incumbents who were not elected to exercise such powers or perform such duties. It is claimed that this constitutes a legislative appointment of the members of the board of estimate and apportionment to office to perform the new functions. Even though this point should be well taken, doubtless, its only effect would be to postpone the operation of the act until the next election of officials after the enactment of the law, who it might be assumed would be chosen with reference to the new duties. See People ex rel. Williamson v. McKinney, 52 N. Y. 374; People ex rel. Lovett v. Randall, 151 N. Y. 497, 45 N. E. 841. This provision must be construed in the light of article 8, § 1, by which the Legislature is authorized to enact special laws for municipalities and to amend and repeal the same. Many authorities have been collated with great industry by the learned counsel for the appellant, upholding and enforcing these constitutional provisions designed to prevent the Legislature from itself appointing local officials and to preserve the home rule principle that local officers, whose election or appointment is not expressly provided for in the Constitution, shall be elected by the electors of the city, town, or village, as the case may be, "or appointed by such authorities thereof as the Legislature shall designate for that purpose." No decision has been cited or found holding that it is a violation of the constitutional provision now under consideration for the Legislature to increase the power of one local official or diminish that of another during his term of office. The Legislature has always exercised this power, and bills by which this has been done have passed at nearly every session. Almost annually the legislative powers and duties of local officers and boards elected or appointed have been transferred to others, and often appointive officers have been substituted for others who were elected. Offices and boards have been wiped out and the functions devolved on other offices existing or newly created. In most, if not all the cities the Legislature has taken from the common council or board of aldermen, which in the early days was vested with authority to

enact all local legislation, important legislative powers and vested them in boards of health and boards of park and fire commissioners and other like bodies. Its authority to enact such laws has never before been questioned upon this ground.

In People ex rel. Board of Park Commissioners v. Common Council, 28 Mich. 243, 15 Am. Rep. 202, the Legislature had appointed commissioners to recommend to the common council of the city of Detroit lands for a city park, and the city had accepted the commissioners for such purpose, and thereafter the Legislature undertook, without the further consent of the city, to clothe the commissioners with final authority to purchase lands for the city for park purposes. On an application to compel the issue of bonds to pay for the lands it was held that this was in contravention of a similar constitutional provision to ours precluding the Legislature from itself appointing local officers. Judge Cooley, in his opinion, went beyond the facts of the case and discussed the authority of the Legislature to transfer the duties of one elected or appointed official to another, who was not chosen with a view to the performance thereof. He, however, concedes the power of the Legislature to diminish or add to the duties of a municipal officer or board, but expresses the opinion that the duties added should be similar or germane to the functions with which the officer or board was clothed, when elected or appointed. In Attorney General v. Cogshall, 107 Mich. 181, 65 N. W. 2, a board of supervisors was abolished and their duties divided between aldermen and another board. It was held that this was not a legislative appointment of the new officers, but a transfer of functions from one set of officers to another, which was not uncommon and was valid. It Moreland v. Millen, 126 Mich. 381, 85 N. W. 882, it was held competent for the Legislature to abolish a board of public works consisting of three members previously appointed by the mayor and council, and to vest the duties in a single commissioner to be appointed by the mayor then in office. On the point decided in the Michigan case first cited, our Court of Appeals has held the contrary (Astor v. Mayor, 62 N. Y. 567), and the obiter discussion is in conflict with the only authority in our own state precisely in point. Matter of Lester, 21 Hun, 130.

The tendency of the decisions of the courts of this state has not been to limit the authority of the Legislature in transferring the duties of one officer or body to another. These are all statutory offices. Long v. Mayor, 81 N. Y. 425. The power of the Legislature to abolish or change the duties of any statutory municipal office during the term of office of the incumbent has been frequently declared in unqualified terms, and neither alderman nor the board of aldermen forms an exception to the rule. Matter of Lester, 21 Hun, 130; Long v. Mayor, supra; Koch v. Mayor, etc., 152 N. Y. 72, 46 N. E. 170; Pearce v. Stephens, 18 App. Div. 101, 45 N. Y. Supp. 422, affirmed 153 N. Y. 673, 48 N. E. 1106; Demarest v. Wickham, 67 Barb. 314; Matter of Allison v. Welde, 172 N. Y. 421, 65 N. E. 263; People ex rel. Metropolitan St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, 67 N. E. 69; People v. Pinckney, 32 N. Y. 377; Matter of Zborowski, 68 N. Y. 88; Astor v. Mayor, 62 N. Y. 567; Demarest v. Mayor, 74 N. Y. 161. See, also, to same effect, Shoemaker v. U. S., 147 U. S. 282, 13 Sup. Ct. 361, 37 L.

Ed. 170. There may be, and doubtless is, some limitation on the power of the Legislature to transfer the duties of one local office, not a constitutional office, to another; but it is not necessary to decide that now, or to say whether the courts of this state will adopt the doctrine of the Michigan Park Commissioners Case in the full extreme, because even under its doctrine this legislation can be sustained.

The board of estimate and apportionment was created in 1873 by section 112, c. 335, p. 517, of the Laws of that year, primarily for the purpose of protecting the city's property rights and interests having reference to its finances and revenues. The Legislature has from time to time increased its power and functions. The revisers of the Greater New York Charter, in their official report of December 1, 1900, stated that the board "has long and successfully stood the test of experience," and, concerning the extension of its powers, says:

"The commission has recommended a considerable extension of the powers now conferred upon the board of estimate and apportionment. With respect to what may be called the routine expenditures of the city, whether they are provided for by taxation or by use of the city's credit, the board of estimate and apportionment is given large powers. By reason of the possession of these new powers and of the increase of its freedom in exercising the powers which it has from the beginning of its history possessed, the board of estimate and apportionment under our draft charter will be the most important body in the city government. Whatever dissatisfaction may have been felt with any other municipal body, the board of estimate and apportionment has generally given satisfaction for its capacity, efficiency, and integrity. Under the plan of the commission it will be in reality the center of all the legislative activity in relation to financial affairs and of much of the administrative activity of the city. It will be in effect an upper house of the city legislature and also a cabinet of the most important administrative officers."

The commission to draft the Greater New York Charter decided to further curtail the powers of the board of aldermen and increase the powers of the board of estimate and apportionment and particularly with reference to the granting of so-called franchises (Ash's Greater New York Charter, [1st Ed.] p. xxxvii), and in their report to the Legislature said:

"But it is a marked feature of the charter now presented that it differentiates the powers relating to franchises, the creation of debt, the expenditures of money, the laying of taxes and assessments—these being the only powers liable to serious abuse—from the ordinary powers of a municipality embracing the countless subjects requiring municipal regulation. The former class of powers the commission has protected against abuse by special and appropriate safeguards—safeguards which are in some respects unique, and which will in its judgment prove effective. Thus, as to franchises and their disposition, the charter proposes a radical change of the highest importance and value. The streets of the city belong of right to the whole people. Their use for the public benefit, and their control in the public interest, ought never to be permanently parted with in favor of any private interests whatever. The charter, therefore, declares that they are inalienable, and that no rights therein shall hereafter be granted by the municipal assembly except upon the approval of the board of estimate and apportionment, and then only for limited periods, and upon provision being made for periodical revaluations. Hereafter, therefore, no disposition of franchises, even for such limited period, can be made by the municipal assembly without the concurrent action of the board of estimate and apportionment. This board is a body conservative in its nature and familiar with the extent of the city's debt, with its revenues, with its wants, and with the amount that can be reasonably raised by taxation. * * * *."

· The Legislature thereupon provided in the Greater New York Charter, pursuant to this recommendation, that no franchise should be granted "except on terms approved by vote or resolution of the board of estimate and apportionment." Laws 1901, p. 38, c. 466, § 74. The commissioners further reported to the Legislature that grants of franchises had been unreasonably delayed by the municipal assembly, and to remedy this abuse they provided in section 48 (page 26) that not only should the board of estimate and apportionment prescribe the conditions upon which the consent should be granted and first passed thereon, but that the consent should become of force without action on the part of the board of aldermen, unless it disapproved the action of the board of estimate and apportionment within six weeks. The board of estimate and apportionment had succeeded to the duties of the board of street opening and improvement and had authority to acquire lands for new streets and public grounds, to widen and contract and abandon streets, and to pave and repave them and otherwise improve them, leaving the police power vested in the board of aldermen. The Constitution does not refer to the authorities having the police or street legislative power over streets, to regulate their use by the people, but to those who are authorized to make improvements and have charge of the maintenance thereof. Town of Lysander v. S. L. & E. Ry. Co., 31 Misc. Rep. 330, 65 N. Y. Supp. 415, affirmed 51 App. Div. 617, 66 N. Y. Supp. 1146; Matter of Kings Co. R. R. 41 Hun, 425; Matter of Rochester Elec. R. Co., 123 N. Y. 351, 25 N. E. 381.

This was the condition of statutory legislation at the time the present members of the board of estimate and apportionment, consisting of the mayor, comptroller, president of the board of aldermen, and presidents of the five boroughs, were elected to their respective offices. The legislation of 1905 indicates that the last scheme, requiring to some extent the co-operation of both the board of estimate and board of aldermen was unsatisfactory, and it was determined to vest the exclusive control in one body. It was accordingly vested in the board of estimate and apportionment. The property owners abutting upon a street through which it is proposed to construct a street railroad have a voice in the matter by the requirement of the Constitution with reference to obtaining their consents. The consent of the local authorities required by the Constitution has reference to the consent of authorities representing the entire city. The main considerations in determining whether such a consent should be given are the public convenience and securing a revenue to the city for the privileges granted, thus protecting the municipal interests as a whole. The board of estimate and apportionment was deemed by the Legislature better qualified to judge of the conditions to be imposed in granting such privileges that will bring the greatest revenue to the city. The duties added by these statutory amendments are germane to those with which the board of estimate and apportionment was vested when the defendants were elected. The existing authority was merely extended and enlarged. The objection, therefore, that this legislation violates the provisions of section 2 of article 10 of the Constitution, is untenable. · 

. We are of opinion that the objection that this legislation contravenes the provisions of section 18 of article 3 of the Constitution is likewise

untenable. Important legislation has frequently been enacted on the assumption that the Legislature has authority to determine who shall have control of the streets and highways of a municipality, and thereby is authorized to designate the local authorities whose consent is required. The courts have always recognized that the Legislature, through the exercise of its authority to designate the officials who shall have control over the streets, has the power to designate the local authorities whose consent is required. Matter of Kings County Elevated R. R. Co., 41 Hun, 425; Town of Lysander v. Syracuse, L. & D. R. R. Co., 31 Misc. Rep. 330, 65 N. Y. Supp. 415, affirmed 51 App. Div. 617, 66 N. Y. Supp. 1146; Matter of E. R. Co., 123 N. Y. 351, 25 N. E. 381. But for this provision of the Constitution adopted in 1874 the Legislature could grant a complete charter to a street railway, as it always did prior to that time, because it represented the people in the control of the streets, and neither the board of aldermen nor property owners had any voice in the matter, except through their representatives in the Legislature. Davis v. Mayor, 14 N. Y. 506, 67 Am. Dec. 186. It is manifest, therefore, that as to all consents for the use of the streets other than for street railroad purposes the authority of the Legislature is supreme, and it may make an unqualified grant or require the consent of any local official or body as it may deem expedient.

The board of aldermen has no constitutional right, however, to retain control of the streets, even for the purposes of this constitutional provision. The exclusive authority to acquire, improve, regulate, and control many public grounds, streets, and avenues of municipalities has often been vested in a board of park commissioners and other boards, and is to-day in many if not almost every city of the state, and such legislation has often been sustained by the courts. Astor v. Mayor, etc., 62 N. Y. 567. Aside from the question of transferring duties from one officer to another not germane to the duties of the incumbent of the latter when elected or appointed, which is elsewhere considered, it is clear that the Legislature may vest control of the streets in any local body or board. Rochester & L. G. W. Co. v. City of Rochester, 176 N. Y. 36, 68 N. E. 117.

Sections 26 and 27 of article 3 of the Constitution have no bearing on the points presented. The first of these sections merely authorizes the transfer of the power of the board of supervisors in the counties comprising Greater New York to the "municipal assembly, common council, board of aldermen, or other legislative body of the city"; and section 27 merely authorizes the Legislature to confer further local power of legislation and administration on boards of supervisors. The board of supervisors of New York county never had the control of the streets within the limits of the city. Moreover, while the board of supervisors is the authority whose consent is required for any abutting property owned by the county, it does not constitute the local authorities having charge of streets or highways within the county whose consent is required. It has generally been the custom in our municipalities to elect aldermen by particular districts, known as wards. When the people adopted this constitutional provision, they were aware of the fact that, according to the custom prevailing, the local authorities having control of the streets of a municipality were not always elected by

all of the electors thereof. There is no distinction in this regard between making up a board of local officials by election or appointment.

The board of estimate and apportionment is quite like a small municipal assembly, composed of two houses acting jointly. It consists of eight members, three, including the comptroller, the financial head of the city, being elected at large, and the presidents of the boroughs by the electors of the respective boroughs. It was deemed wise, doubtless, to prevent a deadlock by the presidents of four of the boroughs opposing an improvement in the other, to give the representatives of the boroughs a voice in proportion to the population and taxable property of the borough, and to prevent the local representatives from outvoting the officials elected at large, instead of adjusting the matter and approximating equality by adding to the number, to give each a voice in proportion to the constituency represented. Accordingly it was provided that the mayor, comptroller, and presidents of the board of aldermen should each have three votes, and the presidents of the boroughs of Manhattan and Brooklyn two each, and the president of each of the other boroughs one each, making a total of 16 votes. In the amendment to the rapid transit act, changing the designation of the local authorities in Greater New York Charter whose consent is required from the common council, the predecessor to the board of aldermen, to the board of estimate and apportionment, it is provided in substance that the vote on the resolution granting the application for consent shall be taken as in the meetings of the board of estimate and apportionment, and that a majority of the 16 votes shall suffice. It is claimed on the authority of Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408, that this renders the amendments void. That case merely holds that, where officers are required to be appointed locally, it is not competent for the Legislature to limit the majority so that some of the appointments are made by the minority, which is not directly in point and is not decisive of the question at bar. If legislative or appointive authority were, as often has been the case, vested in a common council composed of two houses—27, say, in one, elected by wards; and 9 in the other, elected at large— could it be successfully maintained that this would be illegal because each member of the less numerous body was given a voting voice equal to 3 times that possessed by the member of the lower house? Moreover, this was evidently an inadvertence, because in the charter amendments passed concurrently therewith a three-fourths vote is required, which insures a majority of the members. If the vote authorized by the amendment to the rapid transit act would render the amendment void, then for the purpose of sustaining the legislation the courts could interpret it as requiring a majority vote of the members of the board or the vote required by the amendments to the charter. Any question in this regard, and concerning the authority of the deputies to sit, can only arise after a grant is made or declined.

It follows, therefore, that the judgment and order should be affirmed. All concur.