*69
 
 OPINION OF THE COURT
 

 Smith, J.
 

 The Council of the City of New York commenced this CPLR article 78 proceeding seeking to annul two orders of respondent Public Service Commission of the State of New York (PSC) approving the renewal of certain cable franchises belonging to respondents Time Warner Cable of New York City and Cable-vision Systems New York City Corporation. The renewals had been negotiated on behalf of the City by respondent Department of Information Technology and Telecommunications (DOITT), and had been approved by respondent Franchise and Concession Review Committee (FCRC), and respondent Rudolph W. Giuliani, the former Mayor of the City of New York and former Chair of the FCRC. The PSC approved the renewals, finding that Council approval was unnecessary. Like the Supreme Court and the Appellate Division, we decline to disturb the PSC’s determination.
 

 Background
 

 In 1905, the State Legislature transferred from the Board of Aldermen (the Council’s predecessor) to the Board of Estimate the power to grant and approve franchises on behalf of the City of New York
 
 (Wilcox v McClellan,
 
 110 App Div 378,
 
 affd
 
 185 NY 9 [1906]). The Board of Estimate approved all franchises until 1989, when the United States Supreme Court ruled that the composition of the Board of Estimate was unconstitutional (Bo
 
 ard of Estimate of City of N.Y. v Morris,
 
 489 US 688 [1989]).
 

 In 1970, the Board of Estimate granted two 20-year cable television franchises covering all of Manhattan to companies that have either merged with or been acquired by Time Warner. Two years later, the State Legislature enacted article 28 of the Executive Law, creating the PSC’s predecessor, the Commission on Cable Television (CCT), and imposing a number of requirements for the granting and administration of cable franchises in New York State. Section 822 (1) of the Executive Law, now section 222 (1) of the Public Service Law, provides that “[n]o transfer, renewal or amendment of any franchise * * * shall be effective without the prior approval of the commission. Such approval shall be required in addition to any municipal approval required under the franchise or by law.”
 

 Pursuant to this section, the CCT, in 1976, promulgated 9 NYCRR 591.3, titled “Municipal action on application for
 
 *70
 
 renewal.” Subdivision 591.3 (b) provides, in part, that “[n]o application for renewal of a cable television franchise may be granted unless the municipality shall have first conducted a public hearing to afford all interested parties the opportunity to be heard concerning the renewal.” Subdivision 591.3 (c), upon which the Council relies (“Action by local legislative body”), provides that:
 

 “(1) Following the public hearing required by subdivision (b) of this section, and such opportunity for further review, including negotiation of a final franchise agreement, as may be found necessary, the local legislative body of the municipality shall decide, in a public session, whether or not to renew the applicant’s franchise. * * *
 

 “(2) In the event the franchise is to be renewed, the local legislative body shall adopt a resolution setting forth findings that the applicant and the municipality have negotiated a franchise agreement, agreeable to both parties, which complies with section 595.1 of this Subtitle and otherwise fulfills the needs of the municipality with respect to cable television.”
 

 In 1983, the Board of Estimate awarded five cable franchises, now owned by Time Warner, covering Queens, Staten Island and western Brooklyn, as well as two franchises owned by Cablevision covering eastern Brooklyn and the Bronx. All seven franchises were set to expire in 1998. In 1990, the Board of Estimate, in one of its last acts, approved the renewals of the two franchises it had granted in 1970 covering Manhattan. The CCT approved the renewal of the two Manhattan franchises, although it changed, among other things, the expiration date to 1998, to comply with 9 NYCRR 591.3 (c) (2), under which a franchise agreement may not be renewed for a term longer than 10 years.
 

 The 1989 Charter Revision Commission created a new statutory scheme for franchises. The first step is the preparation by a Mayor-designated agency of a proposed authorizing resolution, which must set forth the nature of the franchise to be granted, the terms and conditions for the franchise, and the procedure for solicitation and evaluation of proposals
 
 (see
 
 NY City Charter § 363 [b]). Upon receiving the proposed resolution from the Mayor, the Council must hold a public hearing within 90 days and then approve, amend or reject the proposed reso
 
 *71
 
 lution by a majority vote. The Mayor may veto an amended resolution passed by the Council, but the Council may override the veto
 
 (see
 
 § 363 [c]). Although the Council may amend the resolution, “[n]o authorizing resolution or other action of the council may provide for any involvement by the council or any member of the council in the selection of a franchise pursuant to such resolution”
 
 (see
 
 § 363 [d]). If the Council adopts an authorizing resolution, the agency may issue requests for proposals, after consulting with the Corporation Counsel, obtaining any requisite approval from the Department of City Planning, and conducting any necessary public hearings. The agency then selects a franchisee and negotiates a franchise agreement
 
 (see
 
 § 363 [e]).
 

 The City Charter provides that within 30 days of receiving the proposed franchise agreement from the agency, the FCRC must hold a public hearing after giving due notice
 
 (see
 
 § 371). After specifically determining that the proposed franchise agreement is consistent with the request for proposal or solicitation, and that the “selection of a franchise” is consistent with the authorizing resolution passed by the Council, the FCRC must review and approve “[e]ach such selection and each franchise agreement”
 
 (see
 
 § 363 [ft; § 373 [d] [4]). Thus, according to the Charter, “[e]very grant of a franchise or modification thereof must be by written agreement approved by the [FCRC] and executed by the responsible agency under the authority of an authorizing resolution adopted by the council ***”(§ 363 [h] [1]).
 
 *
 

 In this case, the Council, in October 1993, adopted a resolution authorizing the Department of Telecommunications and Energy, which a year later became the DOITT, to “grant nonexclusive franchises for the provision of cable television services and the installation of cable television facilities and associated equipment on, over, and under the inalienable property of the City of New York.” The resolution did not mention that the Council’s approval was required, although it did provide that “[a] 11 franchises granted pursuant to this resolution shall require the approval of the [FCRC] and the separate and additional approval of the Mayor.” The resolution was set to expire on October 13, 1998.
 

 
 *72
 
 The Current Renewal Process
 

 The DOITT commenced the renewal process in April 1996, after receiving requests from Time Warner and Cablevision of their desire to renew their respective franchises. On July 12, the DOITT petitioned the PSC for a waiver of several regulations, including a waiver of 9 NYCRR 591.3 (c). Although the DOITT sought a waiver of section 591.3 (c) in its entirety, the petition for waiver discussed only the 10-year limitation on renewals. The Council opposed the waiver, arguing, in part, that the DOITT was attempting to “usurp the legislative authority of the Council.” The DOITT eventually withdrew the petition without prejudice.
 

 As part of the renewal process of the nine franchises, the DOITT, during 1996 and 1997, held 15 public hearings throughout the five boroughs at which several hundred persons testified on issues such as the past performance of Time Warner and Cablevision, and future cable-related needs and interests of the respective communities. In addition to holding the hearings, the DOITT surveyed cable television subscribers, held discussions with representatives of other City agencies, and reviewed the franchising activities of other municipalities. On May 20, 1998, at a hearing before the Council’s Committees on Finance, Land Use, and Governmental Operations, the DOITT informed the Council members that, on the advice of the Corporation Counsel, the franchise renewals would be submitted to the FCRC for its review and approval, but not the Council.
 

 Pursuant to the Council’s authorizing resolution, on August 18, 1998, the DOITT issued a request for proposals for renewal of Time Warner’s franchises. The next day Time Warner, the only company that responded, submitted a proposal reflecting prior negotiations with the DOITT. The process was the same for Cablevision’s franchises. On August 19, 1998, the DOITT and the FCRC announced that they would hold a joint public hearing on September 14, 1998, regarding Time Warner franchises, and scheduled a vote by the FCRC on September 16, 1998. Despite the Council’s attempt to prevent the FCRC from voting by commencing an action in Supreme Court, New York County, seeking declaratory and injunctive relief, the FCRC voted, as scheduled, unanimously to approve the renewal of all of Time Warner’s franchises. Supreme Court dismissed the Council’s action for failure to exhaust administrative remedies, noting that any action against the PSC must be
 
 *73
 
 commenced in Supreme Court, Albany County. The FCRC and the Mayor subsequently approved Cablevision’s two franchise renewals.
 

 On July 15, 1999, the PSC issued the two orders approving the renewals of all nine franchises, rejecting the Council’s argument that the City Charter did not preclude it from approving franchise renewals. The PSC determined that “local legislative body’ in section 591.3 (c), consistent with Public Service Law § 222 (1), referred to the body designated by local law as responsible for approving franchises. Since the Charter assigned that responsibility to the FCRC and expressly precluded the Council from approving franchises, the Council was not the “local legislative body” under section 591.3 (c). The PSC also found that the renewals met the needs of the City and served the public interest, noting the Citys due diligence in renewing the franchises.
 

 The Present Litigation
 

 The Council commenced this article 78 proceeding in Supreme Court, Albany County, seeking to annul the two orders of the PSC, and to direct the City respondents to submit the franchise agreements to the Council for review and approval. Supreme Court held that since the Charter limited the Council to passing an authorizing resolution, it was rational for the PSC to interpret its own regulation as not requiring Council approval of the franchise renewals. Supreme Court further held that even if the renewals did not conform with section 591.3 (c), the PSC’s approval of the franchises was proper under Public Service Law § 222 (3) because the PSC found that the franchises would serve the public interest. Supreme Court remitted the action to the PSC for a more detailed finding with respect to whether the franchise agreements complied with section 595.4 (c) (2), dealing with the administration and operation of the public, educational and governmental access channel. The Appellate Division dismissed the petition in its entirety, concluding that the PSC’s determination that the FCRC was the “local legislative body” under section 591.3 (c) “was not affected by an error of law, arbitrary or capricious.” (286 AD2d 812, 814.) We now affirm.
 

 Initially, we reject the Council’s argument that no deference is due the PSC orders. The Council’s challenge to the PSC orders relies solely on the requirement of “local legislative approval” set forth in 9 NYCRR 591.3 (c). In particular, the Council challenges the PSC’s conclusion that 9 NYCRR 591.3
 
 *74
 
 (c) “was designed to afford the public notice and an opportunity to be heard in the course of the franchise renewal process to maximize public participation, rather than define the specific entity that must approve franchise renewals.” As this Court has made clear, “the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable”
 
 (Matter of Gaines v New York State Div. of Hous. & Community Renewal,
 
 90 NY2d 545, 548-549 [1997]). Here, the PSC’s predecessor promulgated 9 NYCRR 591.3 (c) and the PSC is responsible for ensuring compliance with its requirements. The PSC, in applying its regulation, relied not only on the statute but also on its own past practices with respect to New York City cable franchises
 
 (see Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451 [1980];
 
 compare Weingarten v Board of Trustees of N.Y. City Teachers’ Retirement Sys.,
 
 98 NY2d 575, 580 [2002]).
 

 On the merits, the PSC rationally concluded that “local legislative body” in 9 NYCRR 591.3 (c) meant the body designated to approve franchise renewals. The authorizing statute for section 591.3 (c) — Public Service Law § 222 (1)— speaks of “any municipal approval required * * * by law.” As the PSC noted, in municipalities other than New York City, franchises are granted by the town board, village board of trustees, or the common council of the city, as required by Town Law § 64 (7), Village Law § 4-412 (3) (6), General City Law § 20 (10) and § 23 (2) (b), and Second Class Cities Law § 37, respectively. In New York City, however, the Charter requires that the FCRC approve franchises and explicitly bars any participation by the Council after the Council passes an authorizing resolution. Thus, the PSC rationally concluded that for purposes of 9 NYCRR 591.3 (c), FCRC was the body with authority to approve franchise renewals and that its regulation did not require or authorize the additional approval of the Council.
 

 We reject the Council’s argument that the Charter precludes Council involvement in selection but not renewal of franchise agreements. As noted, “local legislative body” under section 591.3 (c) turns on which body has the authority to grant and approve franchises under local law. The absence of an express prohibition on the Council’s authority to approve renewals does not amount to an affirmative grant of power. The Charter gives the FCRC the authority to approve franchise
 
 *75
 
 agreements
 
 (see
 
 NY City Charter § 373 [d]). As noted, section 363 (c) of the Charter gives the Council the power to pass an authorizing resolution, and the very next subdivision limits the authority conferred by providing that the Council may not use an authorizing resolution to involve itself in “the selection of a franchise” (see NY City Charter § 363 [d]). The decision to approve renewal of a franchise agreement necessarily involves selection of a franchise. The PSC, therefore, rationally read the Charter to limit the power of the Council with respect to franchise renewals. We conclude that the Charter contains the same limitation in connection with the renewal process. Therefore, the PSC correctly concluded that the FCRC was the “local legislative body” whose assent is required by state regulation. Inasmuch as the FCRC approved the franchises pursuant to the Council’s authorizing resolution, the PSC’s final approval of these franchises was proper. In light of the foregoing, the issue whether the PSC could have waived, and did in fact waive, Council approval is moot.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed, with costs.
 

 *
 

 Since 1984, cable television has also been regulated by the Federal Cable Communications Policy Act of 1984 (47 USC § 521
 
 et seq.).
 
 Section 546 of title 47 of the US Code, in particular, establishes a procedure that franchise authorities must follow in renewing franchises, which limits the power of municipalities to disapprove franchise renewals
 
 (see
 
 47 USC § 546).